660 S.E.2d 278

William R. SIMPSON, Jr., Appellant,

v.

Becky H. SIMPSON and Wade Ingle, Defendants,

of whom Becky H. Simpson is Respondent.

No. 4341.

Court of Appeals of South Carolina.

Submitted Nov. 1, 2007.

Decided Feb. 8, 2008.

Rehearing Denied April 28, 2008.

528

Steven S. McKenzie, of Manning, for Appellant.

James McLaren, C. Dixon Lee, Jan L. Warner, all of Columbia, for Respondent.

PER CURIAM.

In this domestic action, William Robert Simpson, Jr., (Husband) appeals the family court's order, arguing the family court erred in (1) its equitable distribution of marital property; (2) finding Simpson Farms, LLC, was marital property; (3) failing to correctly ascertain the inventory of the Buck and Bull store; (4) failing to give Husband credit for $16,000 in monies he paid to his former wife, Becky H. Simpson (Wife); (5) finding the parties' residence was transmuted into marital property; and (6) awarding Wife attorney's fees and costs. We affirm.

## FACTS

Husband and Wife were married on September 3, 1989. At the time of the marriage, Husband was nineteen and Wife was seventeen years of age. During the marriage, Wife primarily

stayed at home and took care of the parties' two children. She maintained periodic outside employment, including a job at the children's private school, Clarendon Hall, for which the parties received reduced tuition.

Throughout the marriage, Husband worked as a farmer with his father, William Simpson, Sr. (Simpson, Sr.).[1] In exchange for Husband earning a nominal salary and working hard, Simpson, Sr. awarded him a fifty percent interest in Simpson Farms. Husband also bought other property that he farmed separately from his father. He financed the purchase of the additional land in various ways. At times, he farmed the land or cut timber in order to pay the purchase price. At other times, he borrowed money from banks.

At the beginning of the marriage, the parties purchased a mobile home, using $6,000 Wife inherited, which was located on Simpson, Sr.'s property. Over time, the parties cleared the land, and in 1995, they built the marital residence. On May 15, 1996, Simpson, Sr. formally deeded the property to Husband. At the time of the final hearing, the residence had $78,600 outstanding on the mortgage.

In late 2003, Wife began acting somewhat erratically and appeared depressed. Husband found Wife to be more irritable and believed she preferred to be alone without him or the children. To support Husband's claim that Wife was acting irrationally, he testified that when Wife returned from a trip to Florida in July 2004, she had three tattoos. Eventually, Wife was diagnosed as bipolar. Thereafter, Husband asked Wife for a divorce.

At this point, Wife was not represented by counsel. Husband took Wife, who was accompanied by her elderly grandfather, to his attorney's office to sign a separation agreement. Wife signed the separation agreement, which was later approved by the family court. When she signed the agreement, Wife claimed she was unaware of the parties' finances because Husband handled the financial aspects of their marriage. In the time frame between Husband asking Wife for a divorce

---

1. Husband was also a named party in Simpson, Sr.'s divorce. *See Simpson v. Simpson,* Op. No.2007–UP–147 (S.C. Ct.App. filed April, 4, 2007) (unpublished opinion).

and the signing of the separation agreement, Wife began dating Wade Ingle.

A few months later, Wife retained counsel and moved to have the separation agreement set aside, claiming she was undergoing psychotherapy and taking medication at the time she signed the separation agreement. She also argued Husband had not made a full financial disclosure. The family court, noting it would not have approved the separation agreement had it known Wife's mental condition, set aside the agreement.

After the family court set aside the separation agreement, Husband instituted this action seeking a divorce based upon Wife's adultery. While the divorce proceedings were pending, Husband closed the Buck and Bull store he operated and attempted to auction off the inventory. The family court halted the sale in order to determine the inventory's value.

The family court subsequently issued a bifurcated decree of divorce, granting Husband a divorce based upon Wife's adultery, which occurred after the parties separated. The family court left open all other issues, noting, "This [o]rder shall not be construed as making any finding relative to the issues of fault of either party ... as may affect equitable division, custody, counsel fees, [and] suit money."

After a two-day hearing on the remaining issues, the family court issued its final order.[2] The order provided Wife was barred from alimony because of her adultery. The family court awarded Husband sixty percent of the marital property, totaling $320,655, and awarded Wife forty percent of the marital estate, totaling $213,876, pursuant to the family court's consideration of the equitable distribution statute. Additionally, the family court ordered Husband to pay half of Wife's attorney's fees and costs.

Accordingly, Husband filed a Rule 59(e), SCRCP, motion to reconsider, which the family court denied. This appeal follows.

---

2. At the hearing, both parties agreed Husband was to have custody of the two children.

## STANDARD OF REVIEW

On appeal from the family court, this Court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not require us to disregard the family court's findings, and we remain mindful that the family court, who saw and heard the witnesses, is in a better position to evaluate their credibility and assign weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## LAW/ANALYSIS

### I. Equitable Distribution

■ Husband argues the family court erred in its equitable distribution of the marital property. Specifically, Husband contends the family court's equitable division attempted to compensate Wife for her failure to receive alimony. We disagree.

■■ The division of marital property is within the sound discretion of the family court, and on appeal, it will not be disturbed absent an abuse of discretion. *Greene v. Greene,* 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). Section 20-7-472 of the South Carolina Code (Supp.2006) imparts the family court with fifteen factors to consider in equitably apportioning marital property. The statute vests the family court with the discretion to decide the weight to assign various factors. *See id.* ("In making apportionment, the court must give weight in such proportion as it finds appropriate....."). On appeal, "this [C]ourt looks to the overall fairness of the apportionment, and it is irrelevant that this [C]ourt might have weighed specific factors differently than the family court." *Doe v. Doe,* 370 S.C. 206, 213-14, 634 S.E.2d 51, 55 (Ct.App.2006).

In *Berry v. Berry,* 294 S.C. 334, 335, 364 S.E.2d 463, 464 (1988), the family court's order, which awarded an adulterous spouse an equal share of the marital property, provided,

Although it was ... adultery that precipitated this divorce action, no deduction has been made from her share by reason of her fault.... Were it not for the length of this

marriage and the fact that [she] is barred from alimony, I would have awarded her a substantially lower percentage of the marital property.

In affirming this Court's reversal of the family court's order, the Supreme Court noted, "[T]he preclusion of an alimony award to a spouse cannot be used to increase an equitable distribution award." *Id.*

In the present case, Husband alleges the family court attempted to compensate Wife through equitable distribution because she was statutorily barred from receiving alimony. He points to what he believes is the family court's "skewed" factual findings in favor of Wife to award her forty percent of the marital estate.

We find the record fails to support Husband's contention. In its order, the family court granted Husband a divorce based upon Wife's adultery that took place after the parties separated. Further, the order provided, "There is no evidence of marital misconduct from either party that would rise to the level to [a]ffect the division of property. The wife's adultery took place only after the parties' separation." Unlike the situation presented in Berry, the family court specifically stated Wife's marital misconduct did not affect the equitable distribution.

In this case, the family court awarded Husband twenty percent more than Wife, dividing the property in a sixty-forty split. The court took into consideration the direct and indirect contributions of both parties and the substantial "sweat equity" of Husband. The award considered the appropriate statutory factors and this State's public policy that a party's marital misconduct does not justify a severe penalty for equitable apportionment purposes. *See Doe*, 370 S.C. at 216, 634 S.E.2d at 57 (finding South Carolina law "expressly disallow[s] fault as a penalty" in determining equitable apportionment between a husband and wife). Therefore, we agree with the family court that a forty percent award of the marital property to Wife is proper.

## II. Marital Property

Husband argues the family court erred in finding Simpson Farms was marital property. Husband maintains his

fifty percent interest in Simpson Farms was a gift from Simpson, Sr. and, as such, is a nonmarital asset. We disagree.

■ Marital property is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held." S.C.Code Ann. § 20–7–473 (Supp.2006). However, property may be considered nonmarital if it is acquired by gift or inheritance. S.C.Code Ann. § 20–7–473(1). Because of the general presumption that property acquired during the marriage is an asset of the marriage, "[t]he burden to show an exemption under S.C.Code Ann. Section 20–7–473 is upon the one claiming that property acquired during the marriage is not marital." *Brandi v. Brandi*, 302 S.C. 353, 356, 396 S.E.2d 124, 126 (Ct.App.1990) (citations omitted).

Husband points to the testimony of Wife's expert, Mark Hobbs, a certified public accountant, to show Simpson Farms was a gift from his father. During Simpson, Sr.'s divorce proceedings, Hobbs testified the only way Husband could have amassed all of his property was through gift or inheritance because the income shown on Husband's tax returns could not support Husband's vast land holdings. During this trial, Hobbs testified he still believed his earlier conclusions to be true.

After reviewing the record, we find Husband mischaracter-izes and omits much of Hobbs' testimony. Although Hobbs stated he believed Husband's interest in Simpson Farms was a gift, he did so to highlight his belief that Husband could not have amassed his land holdings with the little amount of income he reported on his tax returns. In fact, the very substance of Hobbs' testimony indicated Husband's financial records were inaccurate and incomplete. Hobbs noted Husband's personal expenses "greatly exceeded" the amount of money he reported as income. Further, Hobbs testified he did not see any gift tax returns filed by Husband or Simpson, Sr. to verify Simpson Farms was a gift rather than something Husband acquired through his hard work during the marriage. In addition, the agreement between Husband and Simpson, Sr. provides, "[A]ll farm equipment and farm land of Simpson Farms will become shared equally for invested interest for work on [the] farm...." Husband's own testimony at the

hearing was that he worked for his interest in Simpson Farms: "I earned it all, I worked for it, and he gave it to me."

The evidence in this case establishes Simpson Farms was marital property, and Husband has failed to carry his burden to show otherwise. During the marriage, Husband farmed and received a nominal salary of $120 a week in exchange for an interest in Simpson Farms. Husband's fifty percent interest in Simpson Farms was payment for labor expended during the marriage, and therefore, the family court properly concluded it was an asset of the marriage.

## III. Inventory of Buck and Bull

■ Husband avers the family court failed to properly determine what the inventory of the Buck and Bull store included at the time this action was commenced. We disagree.

Although the sale of the store's inventory was halted pursuant to a court order, Husband offered no figure during the hearing as to the inventory's value at the time he instituted this action. Therefore, we cannot determine how much this value depleted between the filing of the action and the final hearing. *See Honea v. Honea,* 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct.App.1987) ("We have stated before, and we reiterate here, that a party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family court's findings."). Further, even if the family court's valuation was too low, as Husband alleges, because the family court awarded him the inventory, we can discern no prejudice to Husband if the inventory should be worth more than what the family court found. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("Appellate courts recognize ... an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter.").

## IV. Credit

■ Husband argues the family court erred in failing to reimburse him for the $16,000 he paid to Wife under the August 2004 separation agreement, which was later overturned by the family court. In Husband's view, the $16,000

should be treated as an advance on the equitable distribution Wife received. We disagree.

In support of his contention that he is entitled to a $16,000 credit, Husband submitted a document that listed his purported payments to Wife from August 2004 until January 2005. However, Husband failed to include any checks, bills, or receipts that actually showed the amount he paid. Wife also testified that at most, she received two payments from Husband under the agreement. Considering the family court found "Husband's financial declaration and financial disclosures [were not] accurate depictions of his actual income and assets," we find no credible evidence Husband actually paid Wife $16,000. Further, the family court considered whether Husband was entitled to a $16,000 credit and specifically declined to give Husband any credit. However, Husband did receive twenty percent more of the marital estate, a factor the family court most certainly considered when declining to give Husband a credit. Therefore, because we affirm the overall apportionment of the marital property, we find no error in the family court's failure to give Husband a credit. *See Deidun v. Deidun*, 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004) (holding on appeal, we look to the overall fairness of the apportionment, and if the end result is equitable, it is irrelevant if we would have arrived at a different apportionment).

## V. Transmutation

Husband argues the family court erred in concluding the residence where the parties lived during the marriage was transmuted into marital property. Husband contends the land on which the marital residence was built was a gift from Simpson, Sr. and, therefore, his separate property. We disagree.

In South Carolina, property acquired by either party during the marriage by gift from an individual other than the spouse is nonmarital property. S.C.Code Ann. § 20–7–473(1). Nonmarital property may be transmuted into marital property if: "(1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage ... so as to evidence an intent by the parties to make it marital

property." *Jenkins v. Jenkins,* 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct.App.2001) (citing *Pool v. Pool,* 321 S.C. 84, 86, 467 S.E.2d 753, 756 (Ct.App.1996)). Whether transmutation of separate property into marital property has occurred "is a matter of intent to be gleaned from the facts of each case." *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App.1988).

Although the evidence shows Husband acquired the land by gift from Simpson, Sr. during the marriage, the parties, using funds earned during the marriage, built the marital home. Together, they cleared the land where the house was built. The residence was occupied by both the parties from the time it was built in 1995 until this action was commenced in 2004. Clearly, the parties utilized the home and land in support of the marriage. *See Cooper v. Cooper,* 289 S.C. 377, 380, 346 S.E.2d 326, 328 (Ct.App.1986) ("Although the evidence shows that the husband acquired the land by gift from his father during the marriage, it also shows, and we so find, that the property lost its nonmarital character and therefore became subject to equitable distribution when the husband, nine years before the parties separated, erected the marital home thereon and thereby used the 1.4 acre tract in support of the marriage."). Accordingly, we find the family court properly concluded the house was transmuted into marital property.

## VI. Attorney's Fees

Lastly, Husband argues the family court erred in awarding Wife attorney's fees and costs. He maintains he will be unable to pay the fees because he has less acreage to farm as a result of the equitable distribution. He also claims Wife did not receive a beneficial result in the litigation. We disagree.

Section 20–7–420(38) of the South Carolina Code (Supp.2006) provides, "Suit money, including attorney's fees, may be assessed for or against a party to an action brought in or subject to the jurisdiction of the family court." The award of attorney's fees is within the sound discretion of the family court and absent an abuse of discretion, will not be disturbed on appeal. *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). In determining whether to award attorney's fees,

the family court should consider "each party's ability to pay his or her own fee; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the fee on each party's standard of living." *Id.* (citing *E.D.M. v. T.A.M,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992)).

At the outset, we note Husband does not appeal the reasonableness of the fees and costs, but simply that he was ordered to pay half the fees. Accordingly, we need not decide whether the fee amount was proper. *See State v. Hiott,* 276 S.C. 72, 86, 276 S.E.2d 163, 170 (1981); Rule 208(b)(1)(B), (D), SCACR (stating an issue not argued in the brief is deemed abandoned and precludes consideration on appeal).

In the final order, the family court ordered Husband to pay half of Wife's attorney's fees and the cost of the certified public accountant for a total of $83,0391.91. In his brief, Husband argues his acreage has been reduced, and he is responsible for the debt on the land the family court awarded Wife. Therefore, he maintains he does not have a greater ability than Wife to pay fees. However, Husband submitted no documentation to prove the land Wife received through equitable distribution is mortgaged. The family court determined Wife was unlikely to be able to earn more than $25,000 a year, while Husband, a successful farmer, had the proven ability to earn $100,000 a year.[3] In addition, Husband received twenty percent more of the marital estate. We agree with the family court that because Husband was awarded substantially more assets, he will be able to pay the debts with less impact on his standard of living.

Further, the fact that Wife received a greater share of the marital estate after the separation agreement was set aside is evidence of Wife's beneficial results. Additionally, Husband's lack of candor with the family court and failure to fully cooperate throughout the litigation process support an award of attorney's fees. *See Donahue v. Donahue,* 299 S.C. 353,

---

3. Husband's first financial declaration disclosed an income of $1,730.76 per month while his last disclosure to the court provided his income was $8,350 per month. In concluding Husband had the ability to earn $100,000 in any given year, the family court also acknowledged Husband's inconsistent declarations created difficulty in ascertaining Husband's actual income.

365, 384 S.E.2d 741, 748 (1989) (finding the wife was entitled to attorney's fees and costs because "the wife's attorney faced difficulty and lack of cooperation from the husband, which serve[d] as an additional basis for the award of attorneys' fees"). Therefore, because the family court fully examined the necessary factors in determining Wife was entitled to fees and costs, we can discern no abuse of discretion in the award.

## CONCLUSION

For the reasons stated above, the order of the family court is

**AFFIRMED.**[4]

ANDERSON, SHORT, and WILLIAMS, JJ., concur.

---

4. We decide this case without oral argument pursuant to Rule 215, SCACR.