697 S.E.2d 702

**Karen B. PRUITT, Respondent,**

v.

**Raymond Scott PRUITT and Karen Leigh Pruitt, Appellants.**

**No. 4719.**

Court of Appeals of South Carolina.

Heard June 22, 2010.

Decided Aug. 4, 2010.

Kenneth E. Sowell, of Anderson, for Appellants.

H. Lee Herron, of Florence and John Leon Schurlknight, Greenville, for Respondent.

GEATHERS, J.

In this divorce action, Raymond Pruitt (Husband) and Karen Leigh Pruitt, Husband's sister (Sister) assign several errors to the family court's final decree, including the conclusions that Sister did not loan $40,000 to Husband and that the marital home was transmuted into marital property.[1] Husband also challenges the finding that his adultery was the sole reason for the breakup of his marriage to Karen B. Pruitt (Wife). We affirm in part, reverse in part, and remand for further proceedings.

## FACTS/PROCEDURAL HISTORY

Wife filed this action in January 2007, seeking a divorce on the ground of adultery. Husband filed an answer admitting the adultery but alleging that Wife forgave him. In March 2007, the family court issued a consent order granting temporary alimony pending further order of the court. Wife then amended her complaint to add Sister as a party to the action because title to the marital home and title to the real estate associated with Husband's business were in Sister's name. Sister answered, alleging that she loaned Husband money over a period of several years and that Husband conveyed the

---

1. For the sake of brevity only, we will refer to the home in which Husband and Wife lived as the marital home. This reference is not a conclusion that the home is marital property subject to equitable distribution.

disputed property to Sister at her request following his failure to repay her.

The family court granted Wife and Husband a divorce on the ground of one year of continuous separation. The family court also granted Wife a lump sum award representing 55 percent of the marital estate as well as attorney's fees in the amount of $10,000. The family court ordered Sister to execute a deed conveying to Husband the marital home and the real estate associated with his business. Husband and Sister then filed motions for reconsideration. The family court denied Sister's motion but granted Husband's motion in part, allowing him a credit for the temporary alimony paid to Wife after the month of December 2007.[2] This appeal followed.

## ISSUES ON APPEAL

1. Did the family court properly find that Sister did not loan $40,000 to Husband?

2. Did the family court err in concluding that the marital home was transmuted into marital property?

3. Did the family court err in failing to consider the marital debts in determining the value of the marital estate?

4. Did the family court err in valuing the marital assets?

5. Did the family court err in concluding that Husband's adultery was the sole reason for the breakup of the marriage, thus entitling Wife to a greater percentage of the marital estate?

6. Did the family court err in failing to consider gifts from Husband's family when distributing the parties' household furnishings?

7. Did the family court err in refusing to deduct from Wife's equitable distribution award the full amount of temporary alimony she received from Husband because her adultery disqualified her from receiving alimony?

---

2. The family court had found in its initial order that Wife had sexual relations with a former boyfriend in December 2007 and thus committed adultery.

8. Did the family court err in awarding attorney's fees to Wife?

## STANDARD OF REVIEW

*Findings*

"In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence." *Nasser–Moghaddassi v. Moghaddassi,* 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005). However, this broad scope of review does not require the Court to disregard the family court's findings. *Id.* at 189–90, 612 S.E.2d at 711. "[W]here evidence is disputed, the appellate court may adhere to the findings of the trial judge, who saw and heard the witnesses. The trial judge was in a superior position to judge the witnesses' demeanor and veracity and, therefore, his findings should be given broad discretion." *Woodall v. Woodall,* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). Moreover, the Court's broad scope of review does not relieve the appellant of the burden of proving to this Court that the family court committed error. *Nasser–Moghaddassi,* 364 S.C. at 190, 612 S.E.2d at 711.

*Division of Marital Property*

"The division of marital property is within the sound discretion of the family court, and on appeal, it will not be disturbed absent an abuse of discretion." *Simpson v. Simpson,* 377 S.C. 527, 533, 660 S.E.2d 278, 282 (Ct.App.2008). "An appellate court should approach an equitable division award with a presumption that the family court acted within its broad discretion." *Dawkins v. Dawkins,* 386 S.C. 169, 172, 687 S.E.2d 52, 54 (2010). The appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun,* 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004). If the end result is equitable, the fact that the appellate court would have arrived at a different apportionment is irrelevant. *Id.*

*Attorney's Fees*

The decision to award attorney's fees is also within the family court's discretion and will not be disturbed absent an

abuse of discretion. *Simpson*, 377 S.C. at 538, 660 S.E.2d at 284.

## LAW/ANALYSIS

### I. *Loan*

■ Husband and Sister challenge the family court's finding that Sister did not loan $40,000 to Husband. We affirm this finding.

Husband and Sister were questioned extensively on whether there was any written documentation supporting their claim that Sister loaned Husband large sums of money to support his business and to fund improvements to the marital home. Neither Husband nor Sister could point to any documentation of the alleged loans, and Wife testified that Husband never told her about any loans from Sister. The family court noted with suspicion the claim that the alleged loans were made in cash. It also cited Husband's history of conveying title to the marital home to another family member—his mother—during previous marital discord as an indication that his conveyance to Sister was, in fact, a further attempt to keep the home out of the marital estate. Moreover, no provision was put in place for Husband to redeem the property.

Husband has not carried his burden of convincing this Court that the family court erred in regarding the alleged loan as a fiction. Hence, we defer to the family court's assessment of witness credibility on this issue. *See Woodall*, 322 S.C. at 10, 471 S.E.2d at 157 ("The trial judge was in a superior position to judge the witnesses' demeanor and veracity and, therefore, his findings should be given broad discretion.").

### II. *Transmutation*

Husband argues that the family court erred in characterizing the marital home as marital property. We agree; however, we remand the case to the family court for a determination of Wife's entitlement, if any, to an equitable interest in the home's increase in value.

■ "Identification of marital property is controlled by the provisions of the Equitable Apportionment of Marital Property Act" (the Act). *Johnson v. Johnson*, 296 S.C. 289, 294, 372

S.E.2d 107, 110 (Ct.App.1988). The Act defines marital property as all real and personal property acquired by the parties during the marriage that is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held. S.C.Code Ann. § 20–3–630(A) (Supp.2009). Under the Act, property acquired by either party before the marriage is nonmarital property. *Id.* § 20–3–630(A)(2).

"The spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital estate." *Johnson,* 296 S.C. at 294, 372 S.E.2d at 110. If a spouse carries this burden, a prima facie case is established that the property is marital property. *Id.* If the opposing spouse then wishes to claim that the property is not part of the marital estate, that spouse has the burden of presenting evidence to establish its nonmarital character. *Id.* (citing *Miller v. Miller,* 293 S.C. 69, 71 n. 2, 358 S.E.2d 710, 711 n. 2 (1987)). If the opposing spouse can show that the property was acquired before the marriage or falls within a statutory exception, this rebuts the prima facie case for its inclusion in the marital estate. *Johnson,* 296 S.C. at 295, 372 S.E.2d at 110.

Even if property is nonmarital, it may be transmuted into marital property during the marriage. *Id.* Transmutation occurs if the property is utilized in support of the marriage or in such a manner as to evidence an intent to make it marital property. *Canady v. Canady,* 296 S.C. 521, 523–24, 374 S.E.2d 502, 503 (Ct.App.1988). Transmutation is a matter of intent to be gleaned from the facts of each case, and the spouse claiming transmutation "must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Johnson,* 296 S.C. at 295, 372 S.E.2d at 110–11.

Evidence of intent to transmute nonmarital property may include using the property exclusively for marital purposes or using marital funds to build equity in the property. *Id.* at 295, 372 S.E.2d at 111. However, "[t]he mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* at 295–96, 372 S.E.2d at 111.

Here, Husband testified that he started clearing the lot on which he built the marital home in 1979 and began construction of the home in 1983. Husband's mother, Dorothy Pruitt (Mother), testified that Husband started building the marital home on land owned by his grandmother, but that it was not completed when Husband married Wife in 1988. Wife's sister also testified that the home was not completed when Wife moved into it, and that Wife helped Husband complete the construction. However, Mother admitted that the couple were able to live in the home when they first married, as it had a bedroom, a kitchen, a bathroom, and a living room.

Mother also testified that she inherited the land on which Husband built the home when Husband's grandmother died and that she later conveyed the land to Husband after he married Wife.[3] Sister also testified that Husband's grandmother originally owned the land on which the marital home sits and that Mother inherited the property and later conveyed it to Husband. Husband conveyed the property back to Mother when he suspected Wife was having an affair in 1995, but Mother reconveyed the property to Husband a few months later. In May 2006, Husband conveyed the property to Sister.

As to Wife's contributions to the marital home's improvements, Mother testified that Wife helped with installing fans and adding a carport and another bedroom to the home. Wife testified that she helped to hang siding, replace the kitchen floor, install glass in the sunroom, paint and install flooring in the master bedroom, and build a carport. However, she also testified that she did not know where the money to pay for the materials came from and that Husband "always seemed to have cash on him." Notably, Husband denied that the cash used to pay for the improvements came from marital funds but rather claimed that the cash came from Sister (see Issue I discussed above). In any event, Wife did not carry her

---

3. Even though Mother's conveyance of land to Husband occurred after he married Wife, property acquired by either party by gift from a party other than the spouse is nonmarital property. S.C.Code Ann. § 20–3–630(A)(1) (Supp.2009); see also Smith v. Smith, 294 S.C. 194, 199, 363 S.E.2d 404, 407 (Ct.App.1987) ("[G]ifts made by a third party to one spouse alone ... do not ordinarily constitute marital property and therefore should not be included in the marital estate.").

burden of showing that the improvements to the home were paid for with marital funds.

Based on the foregoing, Wife failed to carry her burden of producing objective evidence showing that Husband regarded the home as the common property of the marriage, which is essential for a transmutation claim. This case is similar to *Murray v. Murray*, 312 S.C. 154, 157–58, 439 S.E.2d 312, 315 (Ct.App.1993). In *Murray*, the parties had lived in the marital home for the duration of their seventeen-year marriage, and wife had worked on improvements to the marital home during that time. *Id.* This Court stated the following:

> The parties lived in the marital home for the duration of the marriage. Although this was Mrs. Murray's home for over seventeen years, the mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.

> Mrs. Murray contends her contributions of labor and time to the improvement and maintenance of the marital home and rental properties are evidence that the parties considered the properties were marital property [sic]. While improvements made by a spouse to nonmarital property may result in the spouse's receiving an equitable interest in the property, contributions of time and labor do not necessarily prove transmutation. In this case, Mr. Murray paid for all of the properties prior to marriage. Mrs. Murray failed to produce evidence that any appreciable amount of marital funds was expended on improvement of the properties.

*Id.* (citations omitted). Here, similar to the wife in *Murray*, Wife lived in and worked on improvements to the marital home during her nineteen-year marriage to Husband. However, the record does not reflect that marital funds paid for the materials used to improve the home.

Further, there is nothing in the record to show the *value* of Wife's contributions or how those contributions affected the value of the home. Section 20–3–630(A)(5) of the South Carolina Code (Supp.2009) allows a spouse a special equity in the increase in value of nonmarital property when the spouse contributes directly or indirectly to the increase. On more

than one occasion, South Carolina appellate courts have remanded a case to the family court with instructions to determine the value of a spouse's contributions to the increase in value of nonmarital property. *See Anderson v. Anderson,* 282 S.C. 162, 164, 318 S.E.2d 566, 567 (1984) ("On remand, the court shall make factual findings regarding the parties' relative contributions to the improvements."); *Craig v. Craig,* 358 S.C. 548, 559-60, 595 S.E.2d 837, 844 (Ct.App.2004) ("We remand this issue to the trial court to properly consider the full extent of Wife's contributions, the full amount of marital funds employed, and any increase in the value of the property resulting directly from the contributions of Wife."); *Webber v. Webber,* 285 S.C. 425, 428, 330 S.E.2d 79, 81 (Ct.App.1985) ("[W]e remand for a determination of the extent of Mrs. Webber's contribution to the renovation."). Therefore, we remand this case to the family court to determine any appreciation of the marital home's value resulting from Wife's contributions and to reapportion the marital estate.

### III. *Marital Debts*

Husband contends that the family court failed to consider all of the marital debts in determining the net value of the marital estate. We agree as to three particular debts but disagree as to remaining debts listed by Husband. The $35,000 loan balance on Husband's truck, the $1,092 debt to the IRS, and the $356 debt to Husband's accountant should have been deducted from the value assigned to the marital estate because they were supported by the evidence as legitimate business debts.

"Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution." *Wooten v. Wooten,* 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005). Section 20-3-620 of the South Carolina Code (Supp.2009) creates a rebuttable presumption that a debt of either spouse incurred prior to marital litigation is a marital debt and must be factored in the totality of equitable apportionment. *Id.* Section 20-3-620 states, in pertinent part, the following:

(B) In making [a final equitable] apportionment [of the parties' marital property], the court must give weight *in*

*such proportion as it finds appropriate* to all of the following factors:

. . .

(13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage[.]

S.C.Code Ann. § 20–3–620(B)(13) (Supp.2009) (emphasis added).

 "For purposes of equitable distribution, 'marital debt' is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable." *Hardy v. Hardy,* 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993). "In the equitable division of a marital estate, the estate which is to be equitably divided by the family court judge is the net estate, i.e., provision for the payment of marital debts must be apportioned as well as the apportionment of property itself." *Id.* at 437, 429 S.E.2d at 813. "[B]asically the same rules of fairness and equity [that] apply to the equitable division of marital property also apply to the division of marital debts." *Id.* at 437, 429 S.E.2d at 814.

 When the debt is incurred before marital litigation begins, the burden of proving a spouse's debt is non-marital rests on the party making that assertion. *Wooten,* 364 S.C. at 547, 615 S.E.2d at 105. When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for the joint benefit of the parties during the marriage. *Id.* Under these circumstances, the burden of proving the debt is marital rests on the party making that assertion. *Id.*

 If the family court finds that a spouse's debt was not made for marital purposes, it need not be factored in the court's equitable apportionment of the marital estate and the family court may require payment by the spouse who created the debt for non-marital purposes. *Hardy,* at 437, 429 S.E.2d at 814. "[T]he words 'in such proportion as it finds appropri-

ate,' as used in section [20–3–620] accord much discretion to the trial judge in providing for the payment of marital debts as a consideration in the equitable division of the marital estate." *Id.*

Here, the only debts that the family court addressed in its initial order were the alleged loan from Sister, which it rejected, the parties' medical bills, and the Dixie Federal Line of Credit. In its order on Husband's motion for reconsideration, the family court generally addressed the debts listed in Husband's motion. The court indicated that, with the exception of those debts already deducted from the marital assets, the debts listed in Husband's motion did not qualify as debts incurred for the joint benefit of the parties.[4]

 Some of the debts Husband contends were overlooked by the family court are debts of his business, Scott's Collision Center. The value the family court assigned to the business was based on the entry of "Total Assets" in the business' 2006 federal corporate income tax return. However, the debts of the business were not reflected in that entry and thus the entry was not an accurate indicator of the net value of the business. A tax worksheet drafted by Husband's accountant while preparing the business' 2006 tax return lists business assets and includes a 2006 Chevrolet truck valued at $39,704. Husband testified that he owed $35,000 on the truck.

 Husband also testified about the following debts that were listed in his financial declaration and motion for reconsideration and documented in Defendant's Exhibit 16: Webster Rogers accounting firm ($356) and IRS ($1,092). These are

---

4. The order on the motion for reconsideration states:

 The debts the Defendant now contends were omitted in paragraph 12 of his motion make no sense at all. The Court does not recall the testimony with respect to them at the trial. However, the substantial ones are for the purchase of assets no part of which are reflected in the division of the property nor do they appear on the schedule attached to the motion as assets of the business. Eq. [sic] Software, trailer, truck. Nor did the tax return show any interest paid by the business. If that money is in fact owed, it would be owed by the business and those assets which were bought would surely have showed [sic] on the schedule of business assets attached to the motion as it seems would [sic] have been accounts receivable and inventory. The motion exhibit is not convincing of any mistake in the order.

well-documented business debts that should have been deducted from the value of the marital assets.

Turning to Husband's testimony about money he owed his paramour for her purchase of home furnishings for him, he admits that this "debt" was incurred after the filing of marital litigation. However, he contends that the debt should be deducted from the marital assets because Wife took all of the furnishings from the marital home when she vacated it and this alleged wrongdoing required Husband to purchase new furnishings with the financial assistance of his paramour. The family court acted well within its discretion in disregarding the debt to this particular "creditor," as it was not incurred for the joint benefit of both parties. In fact, it was an expenditure naturally associated with the parties going their separate ways.

Regarding the alleged debts listed by Husband that were not adequately explained by his testimony at trial, we defer to the family court's finding that these debts do not qualify as debts incurred for the joint benefit of the parties. *See Woodall*, 322 S.C. at 10, 471 S.E.2d at 157 (holding that because the family court was in a superior position to judge the witnesses' demeanor and veracity, its findings should be given broad deference).

### IV. *Valuation of marital assets*

Husband challenges the family court's valuation of the parties' assets. We agree as to certain assets that were counted twice in the family court's list of marital assets but disagree with Husband's remaining assertions on asset valuation.

Initially, Wife argues that Husband did not preserve this issue for appeal as to the values for the real estate because Husband agreed to these values at trial. We agree. In fact, Husband indicates in his brief that he submitted Joint Exhibit 1, which is an appraisal of the parties' marital home and the land and buildings for Husband's business. However, Husband asserts that the costs of converting the marital real estate to cash should have been deducted from the values assigned to these properties so that Husband would have liquid funds to pay to Wife for her share of the marital estate,

as ordered by the family court. Specifically, Husband argues that he is entitled to a deduction for the realty commissions and any necessary loan costs.[5] We disagree. Because the family court's order does not contemplate the sale of either the marital home or the real property associated with Husband's business, it would be inappropriate to deduct any estimated costs of converting the real estate to cash. *Cf. Bowers v. Bowers*, 349 S.C. 85, 97–98, 561 S.E.2d 610, 617 (Ct.App.2002) (holding that when an order of equitable apportionment does not contemplate the liquidation or sale of an asset, it is an abuse of discretion for the court to consider the tax consequences from a supposed sale or liquidation).

■■■■ Concerning the personal property, Husband argues that two vehicles—the Chevy Sierra and the 2000 Chevy Van—should not have been included in the marital estate because he did not own them at the time that marital litigation was filed. We disagree. Husband testified that he did not sell the Chevy Sierra until two months prior to trial, after marital litigation was filed. Further, the record does not reflect the date when Husband purchased the Chevy Sierra. Moreover, the testimony does not support Husband's assertion that he did not own the Chevy Van when marital litigation was filed. Husband's testimony does not address the length of his ownership of the vehicle. Husband simply testified that he owned it, that he purchased it for $500, and that it was worth $2,500 after he made repairs to it. Therefore, Husband has not carried his burden of convincing this Court that the family court erred by including these assets in the marital estate. *See Duckett by Duckett v. Payne*, 279 S.C. 94, 96, 302 S.E.2d 342, 343 (1983) ("[T]he appellant carries the burden of convincing this Court that the trial court erred.").

■■■■ As to the assets that were counted twice, the asset schedule for the 2006 corporate tax return shows that the value of the GMC Sierra had already been included in the value of Husband's business, which was added as item 3 in the

5. Husband's request for a deduction for loan costs was raised for the first time in his reply brief. Therefore, the Court may not consider this argument. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct.App.2001) ("[A]n argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief.").

family court's list of marital assets. Husband's proposed list of marital assets in his brief omits the value assigned to the business, which the family court took from the "Total Assets" entry on Husband's tax return, and instead lists certain business assets individually. This approach is justified in part because certain business assets accounted for in item 3 of the family court's list also had individual entries in the same list and thus the following assets were counted twice: GMC Sierra (items 3 and 12 in the family court's list) and the business' buildings (items 2 and 3).

Husband also asserts that the family court assigned inaccurate values to the parties' Darlington County bank account, their savings bonds and their boat. However, he does not explain why he believes these values are incorrect. Therefore, he has abandoned this argument as to these assets. See *Glasscock,* 348 S.C. at 81, 557 S.E.2d at 691 ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

Husband also argues that the drag racers housed at his business should not have been included in the marital estate because he did not own them. Husband contested his ownership of these vehicles at trial, and the family court did not find him to be credible on this issue. We defer to the family court's determination of credibility on this issue. *See Woodall,* 322 S.C. at 10, 471 S.E.2d at 157 (requiring broad deference to be given to the family court's findings because the family court was in a superior position to judge the witnesses' demeanor and veracity).

### V. *Husband's Adultery*

Husband argues that the family court erred in finding that his adultery was the · sole reason for the breakup of the marriage and thus Wife was entitled to a greater percentage of the marital assets. We disagree.

The apportionment of marital property is within the discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Morris v. Morris,* 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct.App.1999). "Upon

dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." *Id.* The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership. *Johnson,* 296 S.C. at 298, 372 S.E.2d at 112. Section 20-3-620(B) of the South Carolina Code (Supp.2009) provides that the family court must consider fifteen factors in apportioning the marital estate and give each factor its proper weight.[6] These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. *Johnson,* 296 S.C. at 297–98, 372 S.E.2d at 112. The family court has the discretion to decide what weight to assign various factors. *Greene v. Greene,* 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). The factors were meant to provide merely guidance in reaching a fair distribution of marital property. *Johnson,* 296 S.C. at 297–98, 372 S.E.2d at 112. On review, this Court looks to the fairness of the overall apportionment, and if the end result is equitable, the fact that

6. Section 20-3-620 lists the fifteen factors the family court must consider as: (1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home as part of equitable distribution or the right to live in it for reasonable periods to the spouse having custody of any children; (11) the tax consequences to either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances on the marital property and any other existing debts; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) any other relevant factors that the family court expressly enumerates in its order. S.C.Code § 20-3-620(B) (Supp.2009).

this Court might have weighed specific factors differently than the family court is irrelevant. *Johnson,* 296 S.C. at 300, 372 S.E.2d at 113.

■ Here, to the extent that the family court considered marital fault in the division of marital assets, the record supports the family court's findings that Husband's adultery caused the breakup of the marriage and that Wife's adultery did not occur until December 2007, after Wife filed the complaint and the parties had separated. Husband admitted that he committed adultery, and Wife testified that Husband refused to give up his relationship with his paramour after she requested him to do so.

Further, the family court indicated in its order that it based the division of assets on *several* factors, including the following: marital fault; Wife's indirect contributions to the marriage; the fact that Wife did not have any significant nonmarital assets; and Wife's limited income, earning capacity, and opportunity to acquire other property. Therefore, the family court's division of property was not based solely on marital fault. In any event, we believe that the family court's emphasis on the foregoing factors was appropriate.

■ Nonetheless, because we are reversing the family court's conclusion that the marital home was transmuted and remanding the case for a determination of any special equity Wife may have in the marital home's improvements, reconsideration of the division of the marital estate is in order.

## VI. *Gifts from Husband's Family*

■ Husband contends that the family court erred in neglecting to order Wife to return those household items given to Husband as gifts from members of his family. Wife concedes in her brief that she should return any household items given to Husband by members of his family, but argues that he should have to provide "sufficient evidence" that the specific items claimed are in fact gifts to him from his family. We remand this issue to the family court with instructions to unconditionally order Wife to return to Husband all household items given to him by members of his family. Should the parties disagree on which items should be returned, Husband

has the option of presenting evidence of ownership in proceedings to enforce the order.

VII. *Temporary Alimony*

 Husband asserts that the family court should have given him credit for all of the temporary alimony paid to Wife because her adultery barred her from receiving alimony pursuant to S.C.Code Ann. § 20–3–130 (Supp.2009). We disagree.

In his motion for reconsideration, Husband sought a credit for the temporary alimony paid to Wife on the ground that the family court found in its initial order that Wife had committed adultery during the pendency of this action. The family court granted Husband's motion, but only to the extent that Wife was barred from receiving alimony prospectively. Because the family court found that Wife did not commit adultery until December 2007, it granted Husband a credit only for alimony paid after December 2007.

Section 20–3–130(A) states:

No alimony may be awarded a spouse who commits adultery before the earliest of these two events: (1) the formal signing of a written property or marital settlement agreement or (2) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties.

S.C.Code Ann. § 20–3–130(A) (Supp.2009). In other words, section 20–3–130(A) allows alimony to a spouse only if his or her adultery post-dates the "formal signing of a written property or marital settlement agreement;" the entry of a "permanent order of separate maintenance and support;" or the entry of a "permanent order approving a property or marital settlement agreement between the parties."

Here, there exists no written property or marital settlement agreement. Rather, the parties merely placed on the record an oral agreement regarding temporary relief, and the family court incorporated the oral agreement into its consent order granting temporary relief. Further, there exists neither a permanent order of separate maintenance and support nor a permanent order approving a property or marital settlement

agreement between the parties. Hence, Wife's adultery cannot be said to have post-dated any of the qualifying events listed in section 20–3–130(A). Therefore, she was barred from receiving alimony. The dispute lies in determining whether the bar is retroactive to the first temporary alimony payment, which was made by Husband before Wife committed adultery, or merely to the first payment to occur after Wife's adultery.

Prior to 1990, the statute's bar for an adulterous spouse from receiving alimony was absolute. In 1990, the legislature amended section 20–3–130 to add the language regarding the commission of adultery before one of two events. Act No. 518, 1990 S.C. Acts 2255. South Carolina jurisprudence pre-dating the current version of the alimony statute remain instructive in determining an appropriate disposition in the present case. In *Morris v. Morris,* our Supreme Court terminated alimony retroactively merely to the date of the divorce decree rather than to the very first alimony payment. 295 S.C. 37, 41, 367 S.E.2d 24, 26 (1988). However, unlike the Supreme Court's approach in *Morris,* in *Watson v. Watson,* this Court required a credit against the wife's equitable distribution award for all alimony paid because the wife's adultery pre-dated the temporary alimony award. 291 S.C. 13, 22–24, 351 S.E.2d 883, 889–90 (Ct.App.1986). *Morris* is distinguishable from *Watson* in that the wife in *Morris* did not commit adultery until after a decree of separate maintenance was filed. 295 S.C. at 40–41, 367 S.E.2d at 26. Notably, that decree was a permanent decree in the wife's action for separate maintenance and support and pre-dated Husband's divorce action. *Morris,* 295 S.C. at 40, 367 S.E.2d at 25.

Based on the foregoing, we believe that the family court acted within its discretion in allowing Husband a credit for temporary alimony payments made after Wife's act of adultery in December 2007.

## VIII. *Attorney's Fees*

Husband argues that the family court abused its discretion in awarding attorney's fees in the amount of $10,000 to Wife. Because we remand the case on the property division issues discussed above, the family court must reconsider attorney's fees in light of this Court's opinion. *See Sexton v. Sexton,* 310 S.C. 501, 503–04, 427 S.E.2d 665, 666 (1993) (reversing and

remanding issue of attorney's fees for reconsideration when the substantive results achieved by trial counsel were reversed on appeal).

## CONCLUSION

We affirm the family court's findings that Sister did not loan $40,000 to Husband and that Husband's adultery was the sole reason for the breakup of the marriage. We also affirm the family court's ruling that Husband receive a credit for temporary alimony paid after December 2007. We reverse the conclusion that the marital home was transmuted into marital property but remand for a determination of any special equity Wife may have in the marital home's improvements and reconsideration of the division of the marital estate and the attorney's fees award.

We direct the family court to correct the list of marital assets so that the GMC Sierra and the buildings of the Husband's business are no longer counted twice. We further direct the family court to deduct the following debts from the value assigned to the marital estate: (1) the $35,000 loan balance on Husband's truck; (2) the $1,092 debt to the IRS; and (3) the $356 debt to Husband's accountant. Finally, we direct the family court to order Wife to return to Husband all household items that were gifts from members of his family.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

CURETON and GOOLSBY, A.JJ., concur.