**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Alvenia Lowe Brewer, a/k/a Alvenia Lowe Reeves, Appellant,

v.

Theodore Roosevelt Brewer, Respondent.

Appellate Case No. 2010-178546

———————————

Appeal From Lancaster County
W. Thomas Sprott, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2013-UP-149
Heard October 3, 2012 – Filed April 10, 2013

———————————

**AFFIRMED**

———————————

Philip E. Wright, of Lancaster, for Appellant.

Coreen B. Khoury, of Folks Khoury & DeVenny, LLC,
of Lancaster, for Respondent.

———————————

**PER CURIAM:** Alvenia Lowe Brewer (Wife) appeals the family court's order granting the parties a divorce and equitably dividing their marital property.  She argues the family court erred in (1) failing to equitably divide the parties' personal property, (2) awarding her only a one-half interest in the marital home, (3)

determining Theodore Roosevelt Brewer's (Husband's) Detroit residence (Detroit co-op) was not transmuted into marital property, and (4) finding Wife's credit card debt was nonmarital.  We affirm.

"In appeals from the family court, [appellate courts] review[] factual and legal issues de novo."  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).  Nonetheless, "de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court."  *Lewis v. Lewis*, 392 S.C. 381, 388-89, 709 S.E.2d 650, 654 (2011).  The burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings.  *Id.* at 388, 709 S.E.2d at 653.

## 1.     Personal Property

The parties have settled the issue of the division of their personal property, and the family court approved their settlement agreement in an order dated March 20, 2013.

## 2.     Marital Home

Wife asserts the family court erred in finding she was entitled only to a one-half interest in the marital home.  We disagree.

Subsection 20-3-620(B) of the South Carolina Code (Supp. 2012) sets forth fifteen factors for the family court to consider in apportioning marital property.  Those factors include, but are not limited to: the duration of the marriage and the ages of the parties; "[t]he contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker"; any liens or debts; and each party's income, health, and nonmarital property.  *Id.*  These statutory factors are intended to "guide the family court in exercising its discretion over apportionment of marital property."  *Sanders v. Sanders*, 396 S.C. 410, 418, 722 S.E.2d 15, 19 (Ct. App. 2011).  Appellate courts do not re-weigh the apportionment factors but review the overall apportionment for fairness.  *Johnson v. Johnson*, 296 S.C. 289, 299-300, 372 S.E.2d 107, 113 (Ct. App. 1988).

We find the family court's apportionment of the marital home was fair, and we affirm.  The findings of fact reflected in the family court's order indicate it considered and weighed the appropriate statutory factors.  *See Sanders*, 396 S.C. at

418, 722 S.E.2d at 19 (recognizing statutory factors guide the family court in apportioning marital property). Specifically, the family court found the marriage lasted nine years, and both parties were retired at the time of the marriage and in their seventies at the time of the divorce. The family court further noted the parties enjoyed similar retirement incomes, with Husband receiving approximately $282 more per month than Wife, but Wife's health was good while Husband's was declining. With regard to the marital home, the family court noted Husband had owned the sixteen-and-a-half-acre home site since 1979, and both parties had contributed personal monies and secured a mortgage to fund construction of the marital home. The family court stated that, at the time Wife filed for divorce, the parties owed $114,318 on the first mortgage loan. The parties stipulated to a value of $220,000 for the marital home.

On appeal, Wife argues she contributed more money toward constructing the marital home than Husband. While this assertion may be true, it ignores Husband's other contributions. The parties testified they paid $250,000 for construction of the home and $35,000 for subsequent improvements, for a total of $285,000. However, between personal funds and a second mortgage, the parties claimed to have paid a total of $310,600 to build and improve the marital home.[1] Husband testified he contributed the land plus $75,000 of his own funds. Wife testified she contributed a total of $90,000 of her own funds. Both parties signed the mortgage loan in the amount of $145,600. We find Wife has not shown her contributions to the construction of the marital home were significantly greater than Husband's.

Moreover, we find the family court's overall apportionment of marital property, including the share each party received of the equity in the marital home, was fair. *See Johnson*, 296 S.C. at 299-300, 372 S.E.2d at 113 (restricting appellate review of equitable apportionment to a determination of whether the family court's awards were fair overall). The record indicates the parties made roughly equal contributions to the marital estate. However, because the parties failed to provide the family court with values for the vehicles and personal property, we are unable to compare the precise values of the total awards.

Although different in content, the awards appear fair. The record reflects Husband received all real property and some personal property, including two non-operating vehicles, but also more than $166,000 in marital debt. Even though the family court awarded him both the marital home and the nonmarital Detroit co-op, neither

---

[1] We recognize this claim results in an unexplained overpayment of $25,600.

property was owned "free and clear." The parties owed more than $114,000 on the marital home, and the Detroit co-op was subject to a monthly maintenance fee of $305. Furthermore, the family court ordered Husband to take out an additional loan to pay Wife $52,841 for her equity in the marital home. As a result, Husband received a net award of approximately $54,000, plus the Detroit co-op, two non-operating vehicles, and some furnishings.

On the other hand, Wife received no real property, more personal property than Husband, and no marital debt. She received four vehicles, at least one of which was operational; some furnishings; $52,841 in cash for her equity in the marital home; and her nonmarital credit card debt of approximately $24,000.

Each party received a net award of marital property totaling approximately $50,000, plus unvalued personal property. Accordingly, we find the family court did not err in apportioning the equity in the marital home equally between the parties.

### 3.    Detroit Co-op

Next, Wife asserts the family court erred in holding the Detroit co-op was not transmuted into marital property. We disagree.

Generally, marital property "means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." S.C. Code Ann. § 20-3-630(A) (Supp. 2012). "[P]roperty acquired by either party before the marriage" does not qualify as marital property. S.C. Code Ann. § 20-3-630(A)(2) (Supp. 2012). "The [family] court does not have jurisdiction or authority to apportion nonmarital property." S.C. Code Ann. § 20-3-630(B) (Supp. 2012).

Nonetheless, nonmarital property may be transmuted into marital property if it:

> (1) . . . becomes so commingled with marital property as to be untraceable; (2) . . . is jointly titled; or (3) . . . is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce

> objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.

*Pool v. Pool*, 321 S.C. 84, 88, 467 S.E.2d 753, 756 (Ct. App. 1996) (citations omitted), *aff'd as modified*, 329 S.C. 324, 494 S.E.2d 820 (1998).

We affirm. We find Wife failed to produce evidence the Detroit co-op was transmuted into marital property, and she makes no argument that the Detroit co-op was commingled to the point of being untraceable or that it was jointly titled. She argues only that the parties' use of the property demonstrated an intent to make it marital. We find the evidence Wife provides amounts to mere use rather than transmutation.

In *Murray v. Murray*, 312 S.C. 154, 156-57, 439 S.E.2d 312, 314 (Ct. App. 1993), the husband acquired a home prior to marrying the wife. The parties lived in the home throughout their seventeen-year marriage. *Id.* at 157, 439 S.E.2d at 315. Finding the wife "failed to produce evidence that any appreciable amount of marital funds was expended on" improving the marital home, this court held the home remained the nonmarital property of the husband. *Id.* at 158, 439 S.E.2d at 315. It did, however, affirm the family court's award to the wife of a special equity in the appreciation in value of the marital home during the marriage. *Id.* at 161-62, 439 S.E.2d at 317.

In *Pruitt v. Pruitt*, 389 S.C. 250, 262, 697 S.E.2d 702, 708 (Ct. App. 2010), the husband built a home on land owned by his grandmother. Before completing the home, he married the wife and they moved into the home. *Id.* at 262, 697 S.E.2d at 708-09. The wife assisted him in completing the construction of the home. *Id.* at 262, 697 S.E.2d at 709. However, the husband claimed he paid for the construction of and improvements to the home from his personal funds, and the wife failed to present evidence to the contrary. *Id.* at 262-63, 697 S.E.2d at 708-09. At some point during the marriage, the husband alone received title to the property through a gift from his family, making the home and land his nonmarital property. *Id.* at 262 n.3, 697 S.E.2d at 709 n.3. Although the parties lived in this home during their nineteen-year marriage, these facts demonstrated mere use of the property rather than transmutation. *Id.* at 263, 697 S.E.2d at 709.

In the case at bar, Wife bases her transmutation argument upon (1) her subjective belief that Husband added her name to the deed and (2) the parties' use of the Detroit co-op for temporary lodging and storage. Pursuant to *Murray* and *Pruitt*, we find the evidence in the case at bar demonstrates mere use of the property and not an intent to transmute it into marital property.[2] Accordingly, the family court did not err in finding the Detroit co-op remained Husband's nonmarital property.

## 4. Wife's Credit Card Debt

Finally, Wife asserts the family court erred in finding her credit card debt was nonmarital. We disagree.

In addition to liens and other encumbrances upon the parties' marital and nonmarital property, a family court tasked with equitably apportioning the marital estate must consider "any other existing debts incurred by the parties or either of them during the course of the marriage." S.C. Code Ann. § 20-3-620(B)(13) (Supp. 2012); *compare* S.C. Code Ann. § 20-5-60 (1985) ("A husband shall not be liable for the debts of his wife contracted prior to or after their marriage, except for her necessary support and that of their minor children residing with her."). Subsection 20-3-620(B)(13) "creates a presumption that a debt of either spouse incurred prior to marital litigation is a marital debt and must be factored in the totality of equitable apportionment. The presumption is rebuttable." *Hardy v. Hardy*, 311 S.C. 433, 436, 429 S.E.2d 811, 813 (Ct. App. 1993).

> . . . For purposes of equitable distribution, "marital debt" is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable. The same rules of fairness and equity that apply to the equitable distribution of marital property also apply to the equitable division of marital debts.

*King v. King*, 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct. App. 2009) (citations and quotation marks omitted). However, "[m]arital debt, like marital property, must be specifically identified and apportioned in equitable distribution." *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005).

---

[2] Wife does not argue that she is entitled to a special equity.

We find Wife failed to present sufficient evidence of her credit card debt to identify it as a marital debt. *See id.* Debt incurred by an individual prior to marriage, like property acquired by an individual prior to marriage, is not presumed to be part of the marital estate. § 20-3-620(B)(13); § 20-3-630(A)(2) (providing "property acquired by either party before the marriage" is not marital property). Furthermore, when the family court equitably apportions the marital estate, it must specifically identify and apportion any marital debt. *Wooten*, 364 S.C. at 546, 615 S.E.2d at 105. These provisions implicitly require the party asserting a marital debt to supply the family court with evidence adequate for the family court to determine (1) the party or parties incurred a debt (2) of an approximate amount (3) to a certain creditor (4) during the marriage and (5) that it benefited the marriage.

We find Wife failed to present sufficient evidence for the family court to make this determination and, in turn, fulfill its obligation under *Wooten* to "specifically identify" the debt. Wife's financial statement indicates she paid $900 per month on a balance of $24,000 for "Misc. Credit Cards." When asked whether that debt "arose during the marriage," Wife answered affirmatively. Although Wife conceded she possessed the credit cards before she married Husband, she maintained, "We used those credit cards [during the marriage]." She explained the cards were used for household purchases. According to Husband's testimony, Wife carried her own credit cards and did "[w]hat she wanted" with them.[3]

Despite Wife's contention to the contrary, the family court did not find her $24,000 in credit card debt was nonmarital. The family court was simply unable to determine whether any portion of the debt was marital or nonmarital. The family court stated, "On the day of the [merits] hearing, [Wife] produced no statements or testimony showing creditor's name, balance on credit card at time of filing or time of marriage, time of purchases nor items purchased." In view of Wife's failure to produce specific evidence about her credit card debt that would enable the family court to determine whether or how much of that debt was marital, the family court did not err in refusing to characterize it as marital.

**AFFIRMED.**

---

[3] We note that Husband's substantial credit card debt had been discharged through bankruptcy proceedings.

**FEW, C.J., PIEPER, J., and CURETON, A.J., concur.**