## 2101

Charlie Belle MURRAY, Appellant v. F. Allan MURRAY, As Personal
Representative of the Estate of Fletcher L. Murray, Respondent.

(439 S.E. (2d) 312)

Court of Appeals

*Linda Z. Jackson,* of *Jackson & Jackson,* Columbia, *for appellant.*

*H. Ray Ham,* Cayce-West Columbia, *for respondent.*

Heard Oct. 5, 1993.

Decided Dec. 13, 1993.

Reh. Den. Jan. 20, 1994.

*Per Curiam:*

This is an action for separate maintenance and support, equitable division of marital property, attorney's fees, and costs

brought by Charlie Belle Murray against her husband, Fletcher Murray. The family court judge determined the marital property and awarded one third to the wife and two thirds to the husband. The judge also awarded the wife $400 per month in support.[1] The wife appeals. We affirm.

The parties were married in August, 1972, in Florida. This was a second marriage for each. At the time they separated in 1989, she was seventy-nine years old, he eighty-five. They had been married for approximately seventeen years.

In December, 1989, the couple planned to visit one of the wife's children in Florida, but the husband decided to remain in South Carolina and visit his son and family. While the wife was gone, the husband became ill and was hospitalized. When he left the hospital on January 18, 1990, he went to live at the home of his son.

After her return from Florida, the wife learned that her husband's son had obtained a power of attorney from her husband in December, 1989. Additionally, while she was in Florida, her husband and his son removed approximately $9,000 from the Murrays' two joint checking accounts without her knowledge, leaving less than $300 in the accounts. The $9,000 was placed in another bank account over which the wife had no control. The wife also alleges that her husband's son made a unilateral decision that his father would permanently live with him when he was released from the hospital in January, 1990.

## I.

We first address Mrs. Murray's contention the judge erred in failing to find certain property had been transmuted from nonmarital to marital property.

## A.

Mrs. Murray contends the family court erred in excluding the parties' marital residence and three rental properties from the marital estate.

The marital residence was purchased by Mr. Murray in 1940 and paid for by 1951, some twenty years prior to this

---

[1] While this appeal was pending, Fletcher Murray died. The issue of support is now moot. *See* S.C. Code Ann. § 20-3-130(B)(5) (Supp. 1992) (separate maintenance and support terminates upon the death of either party).

marriage. The three rental properties were also all purchased and paid for by Mr. Murray prior to the marriage. It is undisputed that Mrs. Murray helped maintain and improve the marital home and the rental properties. The record does not reflect, however, the value of these services or how her contributions affected the value of the property. The income received from the rental units was deposited into the parties' joint checking accounts. It was from these jointly held funds, which also included retirement and Social Security incomes, that any improvements or necessary expenditures were made to the marital home and rental units. Mrs. Murray relies on these facts in arguing the property is all marital property.

Under the Equitable Apportionment of Marital Property Act,[2] property acquired by either party before the marriage is nonmarital property. S.C. Code Ann. § 20-7-473(2) (Supp. 1992). In certain circumstances, however, nonmarital property may be transmuted into marital property during the marriage. Property, nonmarital at the time of its acquisition, may be transmuted (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is used by the parties in support of the marriage or in some manner so as to evidence an intent by the parties to make it marital property. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988), *cert. denied*, 298 S.C. 117, 378 S.E. (2d) 445 (1989). Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation, here Mrs. Murray, must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. *Id.*

The parties lived in the marital home for the duration of the marriage. Although this was Mrs. Murray's home for over seventeen years, the mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation. *Johnson v. Johnson, supra; Carroll v. Carroll*, — S.C. —, 419 S.E. (2d) 801 (Ct. App. 1992).

---

[2] S.C. Code Ann. §§ 20-7-471 to -479 (Supp. 1992).

Mrs. Murray contends her contributions of labor and time to the improvement and maintenance of the marital home and rental properties are evidence that the parties considered the properties were marital property. While improvements made by a spouse to nonmarital property may result in the spouse's receiving an equitable interest in the property, contributions of time and labor do not necessarily prove transmutation. In this case, Mr. Murray paid for all of the properties prior to marriage. Mrs. Murray failed to produce evidence that any appreciable amount of marital funds was expended on improvement of the properties. Furthermore, the record indicates Mrs. Murray's efforts were largely routine duties such as cleaning and painting.[3]

Mrs. Murray also argues that income from the rental units was put into the parties' joint banking account, showing an intent to change the rental property to marital property. This argument is without merit. *See Peterkin v. Peterkin*, 293 S.C. 311, 360 S.E. (2d) 311 (1987) (merely using income derived from nonmarital property in support of marriage does not transmute nonmarital property into marital property).

Mr. Murray's Will, dated September 10, 1980, provided that upon his death all of his real property was to be liquidated, with one third of the proceeds to go to his wife, and two thirds of the proceeds to his two children. The Will provided that Mrs. Murray could remain in the marital home only until the estate was settled. This is evidence that he considered the marital residence and the rental properties, which were still titled in his name alone, to be his separate property after his marriage to Mrs. Murray.

On this record, the family court could have reasonably concluded Mrs. Murray failed to carry her burden of proof on transmutation. We find no reversible error.

### B.

Mrs. Murray next contends the family court judge erred in failing to find two mortgages payable to Mr. Murray had been transmuted into marital property.

---

[3] We recognize that Mrs. Murray also performed nonroutine duties on an intermittent basis. However, no evidence was presented to show the value of these services or how they affected the value of any of the properties.

Prior to the Murrays' marriage, Mr. Murray bought and paid for a lot on Lacy Street in West Columbia. He also built a house on this lot prior to the marriage. In 1986, he sold the house and a portion of the lot to Raymond Keller for $22,500. Keller paid Mr. Murray $2,500 in cash and gave him a mortgage for $20,000, payable in monthly installments of $200. This monthly income was deposited into the parties' joint bank accounts. The undisputed value of the mortgage as of the date of this litigation is $15,646.25.

Mr. Murray sold the remaining portion of the Lacy Street lot to the South Carolina Highway Department for $10,000. The family court found that the proceeds from the highway department were used to purchase another house, which was later sold to George Day for $20,000. Day gave Mr. Murray a mortgage on the house, payable in monthly installments. These payments were also deposited into the parties' joint bank accounts. The undisputed value of this mortgage is $14,347.18.

Based upon the same arguments made in respect to the marital residence and the rental properties, Mrs. Murray contends the Lacy Street property was marital property and the mortgages arising from the sale of the property are also marital property. As we have discussed above, these arguments fail to establish transmutation.

## II.

A spouse has an equitable interest in appreciation of property to which she contributed during the marriage, even if the property is nonmarital. *Webber v. Webber*, 285 S.C. 425, 330 S.E. (2d) 79 (Ct. App. 1985). Although the family court did not find transmutation, in accordance with *Webber*, it awarded Mrs. Murray a special equity of $13,250 in the marital home. This represented fifty percent of the appreciation in the home since the marriage in 1972. The court did not award a special equity in any of the rental properties. We discern no error in this determination.

For the first time in her reply brief, Mrs. Murray argues that if the rental property is not transmuted, then she should be awarded a special equity interest in the rental property of fifty percent of its appreciation since the marriage. We are unable to consider this argument. An appellant may not use the

reply brief to argue issues not argued in the appellant's brief. *Bochette v. Bochette*, 300 S.C. 109, 386 S.E. (2d) 475 (Ct. App. 1989).

## III.

Mrs. Murray next contends the family court erred in apportioning one third of the marital estate to her and two thirds to Mr. Murray.

### A.

The family court first found the indirect contributions of the husband and wife were equal. Mrs. Murray argues that Mr. Murray presented little or no testimony to show how much time he spent on a daily basis tending to the affairs of the marriage. After a careful review of the record, we find there is sufficient testimony that the husband and wife made approximately equal indirect contributions to the marriage. This conclusion is in part based on the testimony of Mrs. Murray herself that they contributed equally to the marriage. Therefore, the family court did not err in finding the couple's indirect contributions were equal. Mrs. Murray valued her own indirect contributions at $99,096.

### B.

Mrs. Murray argues the family court also erred in calculating the direct contributions made by each of the parties. She claims her direct contributions to the marriage were $187,193.54.[4]

The family court found the rental income of $69,493.30 claimed by Mrs. Murray included all of the rental income from a duplex located at 704 Augusta Street, West Columbia, South Carolina,[5] $40,093.33, and all of the rental income from Mrs. Murray's former home in Florida,[6] $29,400. Because the property at 704 Augusta Street was marital property, the court allowed each of the parties half of

---

[4] This figure is made up of the following components: (1) Social Security benefits—$55,091.50; (2) Florida Retirement income—$51,594.77; (3) Rental income from nonmarital property Mrs. Murray owned in Florida—$69,493.30; (4) Interest income—$2,621.89; and (5) Miscellaneous income—$2,621.89.

[5] The family court found this to be marital property. Neither party excepts to this finding.

[6] Mr. Murray made no claim to this property. The court found it was nonmarital.

the rental income it produced. Mrs. Murray does not appeal this ruling. The family court then deducted from Mrs. Murray's direct contributions all of the rental income from her Florida property. The court found that because Mr. Murray had provided Mrs. Murray a home that required no rent or mortgage payment, he should be given a credit in the same amount as the rent income received by Mrs. Murray on her former Florida home.

Marriage imposes on a husband the duty of providing the wife with a reasonably adequate and suitable home. *Cook v. Cook*, 213 S.C. 247, 49 S.E. (2d) 9 (1948). The family court should not have given Mr. Murray a credit for something he had a duty to do.

Mrs. Murray claims she is entitled to one half of the income produced by the rental properties located at 204, 206, and 208 South Lucas Street and one half of the income from the Day and Keller mortgages. Because these were the separate property of her husband, not marital property, she is not entitled to any credit for this income.

Mrs. Murray next contends she is entitled to a credit for one half of the sales proceeds of a house on Lexington Street sold by the couple in 1977. Since she made no showing that these proceeds were part of the marital estate at the time this action was commenced, her argument is without merit.

Based on the evidence, we find Mrs. Murray's direct contributions were $167,148.89, which includes the rental income from her Florida home.

The family court found the direct contributions of Mr. Murray were $408,248.35.[7] Because we find Mr. Murray should not be given credit for the sale of the Lexington Street property, we reduce this figure by $12,500.00 to $395,748.35. The resulting total direct contributions to the marriage made by both parties was $562,897.24.

## C.

The family court awarded Mrs. Murray a fifty percent special equity in the appreciation of the marital residence plus

---

[7] This figure is made up of the following components: (1) Rental income (including one half of the rental income from 704 Augusta Street)—$245,504.35; (2) Mortgage income (from the Day and Keller mortgages)—$17,586.00; (3) Social Security—$90,781.00; and (5) Sale of Lexington Street property—$12,500.00.

one third of the marital estate. Based on her direct and indirect contributions, this was a fair apportionment.[8]

## IV.

We find Mrs. Murray's remaining arguments to be manifestly without merit. S.C. Code Ann. § 14-8-250 (Supp. 1992); Rule 220(b)(2), SCACR.

Affirmed.

---

[8] Mrs. Murray also contends the court erred in failing to include in the marital estate the proceeds from two life insurance policies cashed in by Mr. Murray in January or February of 1990. The total value of these policies was approximately $4,850.00. We find their exclusion to be harmless error because of the relatively small value of the policies in relation to the total marital estate.