697 S.E.2d 634

**SUSAN R., Respondent,**

**v.**

**DONALD R., Appellant.**

**No. 4693.**

Court of Appeals of South Carolina.

Submitted April 1, 2010.

Decided June 2, 2010.

108

Christopher Paul Thompson and David Michael Collins, Jr., both of Spartanburg, for Appellant.

Richard H. Rhodes and Ruth L. Cate, both of Spartanburg, for Respondent.

WILLIAMS, J.

In this appeal, Donald R. (Husband) contends the family court erred by (1) requiring Husband to pay Susan R.'s (Wife) premarital medical expenses and costs; (2) imputing additional income to Husband; and (3) awarding attorneys' fees to Wife. We affirm as modified.[1]

## FACTS

On June 22, 2006, Wife filed for divorce on the grounds of Husband's adultery and habitual drunkenness. In Wife's complaint, she sought, inter alia, custody of the parties' children, child support, contribution for their children's uncovered medical expenses, equitable distribution of the parties' assets and debts, alimony, restraining orders, and attorneys' fees. Husband counterclaimed, seeking a decree of separate maintenance and support and requesting custody, child support, contribution for their children's uncovered medical expenses, equitable division of their assets and debts, restraining orders, and attorneys' fees.

The majority of Husband's and Wife's claims were resolved in the parties' settlement agreement, which the family court approved at the final hearing. During the final hearing on May 5 and 6, 2007, the family court heard testimony regarding several outstanding issues not agreed upon by Husband and Wife, namely the parties' income for purposes of computing child support, responsibility for payment of Wife's medical bills, and attorneys' fees.

In its subsequent divorce decree dated June 7, 2008, the family court made the following findings of fact and conclusions of law relevant to this appeal: (1) Husband and Wife married on May 24, 2004, in Spartanburg County; (2) the parties had two children together, one child being born during the marriage and the other child being born prior to the marriage; (3) several witnesses, including two of Husband's

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

paramours, admitted to engaging in an adulterous relationship with Husband, thus entitling Wife to a divorce on the grounds of adultery; (4) Wife waived her claim for alimony; (5) for purposes of child support, Husband's gross monthly income from his employment with Mitsubishi Polyester Film was $4,651.66, which included $100 per month in proceeds from a rental property and $400 per month from Husband's part-time farrier business; (6) Wife's gross monthly income as a nurse was $2,849.41; (7) the $18,542.13 in debt for Wife's surgery at Spartanburg Regional Medical Center was a result of Wife's miscarriage; thus, it was a marital debt, despite being incurred prior to the parties' marriage; and (8) Husband was responsible for paying half of Wife's attorneys' fees.

Husband timely filed a Rule 59(e), SCRCP, motion, arguing the family court erred in its award of attorneys' fees, imputation of additional income to Husband, and requirement for supervised visitation with the parties' children. The family court denied Husband's Rule 59(e) motion.[2] This appeal followed.

## STANDARD OF REVIEW

On appeal from a family court order, this court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). When reviewing decisions of the family court, we are cognizant that the family court had the opportunity to see the witnesses, hear "the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character." *DuBose v. DuBose*, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972).

## ISSUES ON APPEAL

Husband claims the family court erred by (1) requiring Husband to pay Wife's premarital medical expenses and costs;

---

2. The family court did modify one paragraph in its order by permitting Husband to petition the family court to terminate supervised overnight visitation with his children once a psychiatrist informed both parties' attorneys in writing that Husband no longer needed supervised overnight visitation.

(2) imputing additional income to Husband for purposes of child support; and (3) requiring Husband to pay $13,000 of Wife's attorneys' fees. We affirm as modified.

## LAW/ANALYSIS

### I. Wife's Medical Expenses

█ Husband contends the family court lacked jurisdiction to order Husband to pay a portion of Wife's medical bills because the surgery occurred prior to the parties' marriage; thus, it was a nonmarital debt. We disagree.

The family court found Wife's medical bill from Spartanburg Regional Medical Center for $18,542.13 was a marital debt because although the surgery occurred prior to the parties' marriage, it related to the miscarriage of Husband and Wife's child. Therefore, it was a shared expense of the parties. While we agree with the family court's decision to require Husband to contribute towards the repayment of this debt, we modify the family court's classification of this debt as marital because the surgery occurred prior to the parties' marriage. *See Wooten v. Wooten,* 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005) (citing S.C.Code Ann. § 20–7–472(13) (Supp.2004)) (currently S.C.Code Ann. § 20–3–620(13) (Supp.2009)) (stating marital debts include, among other things, "any other existing debts incurred by the parties or either of them during the course of the marriage").

Despite the acquisition of this debt prior to the parties' marriage, we find this debt would not have occurred but for Husband and Wife's relationship, which merits Husband's participation in its repayment. *See* S.C.Code Ann. § 20–5–60 (Supp.2007) ("A husband shall not be liable for the debts of his wife contracted prior to or after their marriage, except for her necessary support and that of their minor children residing with her."); *see also Richland Mem. Hosp. v. Burton,* 282 S.C. 159, 160–61, 318 S.E.2d 12, 13 (1984) (reaffirming common law doctrine requiring a husband to be responsible for necessary debts incurred by a wife prior to and during marriage and holding a hospital could initiate a collection action against husband for medical services rendered to deceased wife based on this doctrine).

Furthermore, the family court has jurisdiction "to include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, *medical attention, expenses of confinement, both before and after [] birth,* . . . and other proper and reasonable expenses. . . ." S.C.Code Ann. § 63–3–530(15) (Supp.2009) (emphasis added). Section 63–3–530(15) grants the family court exclusive jurisdiction to include in any support order a provision for payment of medical expenses and hospital bills that are attendant to childbirth. Regardless of whether Husband and Wife were married on the date of the surgery, Wife's hospital bill was a direct result of her pregnancy and ensuing miscarriage,[3] and the procedure was necessary to Wife's health. Not requiring Husband to share in the responsibility for defraying this expense would thwart the ultimate goal of ensuring a just, equitable, and fair outcome to both parties. Thus, we conclude the family court had jurisdiction, and consequently the authority, to order Husband to pay half of Wife's hospital bill.

## II. Imputing Income to Husband

Next, Husband claims Wife presented insufficient evidence regarding Husband's farrier business and rental property to justify the family court's decision to impute additional income to Husband for purposes of calculating his child support obligations. We disagree.

Child support awards are within the family court's sound discretion and, absent an abuse of discretion, will not be disturbed on appeal. *Mitchell v. Mitchell,* 283 S.C. 87, 92, 320 S.E.2d 706, 710 (1984). An abuse of discretion occurs when the family court's decision is controlled by some error of law

---

3. Husband argues the primary purpose of the surgery was to remove Wife's gallbladder, and Wife failed to provide any medical records to substantiate her testimony that the surgery related to her miscarriage. Despite Wife's failure to supplement the record with medical documentation, we believe both parties' testimony sufficiently establishes that the surgery was a direct result of Wife's miscarriage. Additionally, Husband failed to contest the source of this debt or Wife's lack of documentation after the final hearing, despite his ability to do so by way of a post-trial motion. *See Kneece v. Kneece,* 296 S.C. 28, 33, 370 S.E.2d 288, 291 (Ct.App.1988) (finding a party's failure to move pursuant to Rule 59(e) to have the family court amend its decree to consider the issue of transmutation prevented consideration of issue on appeal).

or when the order, based upon the findings of fact, is without evidentiary support. *Kelley v. Kelley*, 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct.App.1996).

Generally, the family court determines gross income for purposes of calculating child support based upon the financial declarations submitted by the parties. S.C.Code Ann. Regs. 114–4720(A)(6) (Supp.2009). "Gross income includes income from any source including salaries, wages, commissions, royalties, bonuses, [and] rents (less allowable business expenses). . . ." S.C.Code Ann. Regs. 114–4720(A)(2) (Supp. 2009). Additionally, "[u]nreported cas[h] income should also be included if it can be identified." *Id.* When income reflected on the financial declaration is at issue, the family court may rely on suitable documentation to verify income, such as pay stubs, employer statements, receipts, or expenses covering at least one month. Regs. 114–4720(A)(6).

█ We note neither Husband's 2006 financial declaration nor his 2007 income tax return reflected any income from his farrier business or rental property. As a result, it was proper for the family court to consider invoices from Husband's farrier business for purposes of calculating his child support obligation. At the final hearing, Wife introduced invoices from 2004 until 2006 that documented Husband's yearly and monthly income from his farrier business. Wife testified Husband charged between $75 and $135 per horse and shoed horses almost every day of the week. Husband did not contest the validity of the invoices Wife submitted, but he stated he typically charged $50 per horse, which netted him approximately $110 every two weeks based on his current workload. Husband also discussed the ordinary and necessary expenses he incurred as part of running his farrier business during his testimony. In explaining the large discrepancies between his current earnings and past profits, Husband stated his income from the farrier business had decreased because he was spending more time with his son, and the increased cost of gas prevented him from shoeing as many horses as he had in the past.

In regards to Husband's rental property, Husband stated he had not rented his mobile home in more than two years, but when he did rent it, he was charging $450 per month in rent

and was splitting the proceeds with his father who owns the land.[4] Husband contended, however, that he was unable to currently rent the property because it needed "a lot of work to get it where it can be rented." Wife also stated Husband rented out the mobile home for between $400 and $475 per month when she filed for divorce, but it was unoccupied on the date of the final hearing, despite Husband's ability to rent it. Husband estimated it cost him approximately $100 per month to maintain the mobile home and surrounding property.

After considering the parties' testimony and the submitted invoices, the family court concluded Husband earned $921.75 per month in 2004,[5] $1,459.33 per month in 2005, and $1,578.50 per month in 2006. In its decision to impute additional income to Husband, the family court acknowledged the parties' conflicting testimony and determined Husband should be attributed an additional $400 per month from his farrier business and $100 per month for his rental property.

Based on the evidence adduced at the final hearing, the family court did not abuse its discretion in determining Husband's gross income. The documented monthly income from Husband's farrier business was far greater than the $400 actually imputed to Husband, which demonstrates the family court took Husband's expenses and varied workload into consideration in its decision. Furthermore, Husband failed to account for this income in either his financial declaration or his most recent tax return. As a result, the family court did not err in relying on these invoices as they were the most reliable source for computing Husband's gross income. *See* Regs. 114–4720(A)(6); *see also Spreeuw v. Barker*, 385 S.C. 45, 66–67, 682 S.E.2d 843, 853–54 (Ct.App.2009) (upholding family court's decision to deviate from the father's most recent financial declaration in imputing additional income to the father for child support purposes where financial declaration understated father's gross income).

---

4. Husband later testified he only gave his father $100 per month, as opposed to $225 per month, from the rent he collected on the mobile home.

5. The family court's order misstated Husband's 2004 income, as the 2004 invoice for Husband's farrier business reflected monthly earnings of $851.50 as opposed to $921.75. Despite this apparent scrivener's error, we discern no error in the family court's overall award.

■ As to the $100 attributed to Husband from his rental property, both Husband and Wife stated Husband had rented the mobile home in the past for approximately $450 per month. While Husband and Wife differed on whether the mobile home was currently suitable for rental purposes, Husband conceded that he had a tenant one month prior to Wife filing for divorce and that he lived in the mobile home during the pendency of the marital litigation. Furthermore, Husband's own testimony indicates he actually earned $250 per month from the rental property after taking into consideration deductions for maintenance and use of the surrounding property.[6] Because the family court has the authority to include rent for purposes of calculating gross income, we discern no error in the family court's decision to impute this amount to Husband. *See* Regs. 114–4720(A)(2) ("Gross income includes income from any source including rents (less allowable business expenses) . . . .").

### III. Attorneys' Fees

Last, Husband argues Wife was not entitled to attorneys' fees. In the alternative, Husband contends the family court's award of attorneys' fees was unreasonable and excessive pursuant to *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991).

■ "An award of attorneys' fees and costs is a discretionary matter not to be overturned absent abuse by the trial court." *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). In order to award attorneys' fees, a court should consider several factors including: (1) ability of the party to pay the fees; (2) beneficial results obtained; (3) financial conditions of the parties; and (4) the effect a fee award will have on the party's standard of living. *E.D.M.*, 307 S.C. at 476–77, 415 S.E.2d at 816. In determining the amount of attorneys' fees, the family court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, the professional standing of counsel, the contingency of compensation, the beneficial results ob-

---

6. Husband testified it cost him approximately $100 per month to maintain the property, and he paid his father $100 per month for use of the surrounding property.

tained, and the customary legal fees for similar services. *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315.

At the final hearing, Wife's attorney submitted a fee affidavit documenting fees of $26,155.15. Husband did not object to the affidavit or attempt to cross-examine Wife or her attorney on any portion of the affidavit at the final hearing. Citing to *Glasscock* in its final order, the family court required Husband to pay $13,000 of Wife's attorneys' fees because the results were beneficial, the fee was reasonable, Husband was at fault, and he had the ability to contribute.

■■■ Husband first claims Wife is not entitled to attorneys' fees because he successfully defended against some of Wife's claims. Even though Husband may have prevailed on some issues, Wife obtained beneficial results regarding child custody, child support, Husband's adultery, and her entitlement to a portion of Husband's pension and 401(k) plan. *See Golden v. Gallardo*, 295 S.C. 393, 395, 368 S.E.2d 684, 685 (Ct.App.1988) (finding the family court properly awarded the mother a portion of her fees and costs in suit brought by father to enforce visitation rights when both parties prevailed on some issues). Husband is correct in his contention that his fault in causing the break-up of the marriage should not be a factor in awarding attorneys' fees. *See Doe v. Doe*, 370 S.C. 206, 219, 634 S.E.2d 51, 58 (Ct.App.2006) ("A party's fault in causing a divorce . . . is not a factor to be considered when awarding attorney's fees."). Regardless of Husband's adultery, it is evident from the record Husband has a greater ability to pay the fees based on his superior income, which necessarily affects his ability to pay the award and the effect of the award on his standard of living. Taking these factors into consideration, we do not find the family court erred in ordering Husband to contribute towards Wife's attorneys' fees.

■■■ Regarding Husband's argument on the reasonableness of Wife's fees, we do not believe the amount awarded by the family court was excessive. We note the family court did not make specific findings on all six factors from *Glasscock* in its order as it is required to do pursuant to Rule 26(a), SCFCR. *See Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 534–35 (Ct.App.1998) (remanding issue of attorneys' fees be-

cause of family court's failure to set forth specific findings of fact on each of the six required factors to be considered in determining the amount of the fees pursuant to *Glasscock* ). Specifically, Rule 26(a) directs: "An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."

However, we find the record is sufficient to affirm the fees award based on the family court's order and Wife's affidavits concerning costs and fees. *See Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) (stating that when an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court "may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence"). The family court enumerated four of the six factors from *Glasscock,* and Wife's counsel's affidavit demonstrates her fees and hours were reasonable in light of the length of the litigation and her experience and professional standing within the legal community. Accordingly, we affirm the reasonableness of Wife's fees based on our review of the record.

█ Husband also takes specific issue with certain fees assessed for time that Wife's counsel billed relating to a rule to show cause hearing and a separate DSS action. This issue is not preserved for our review because Husband did not object to the affidavit or attempt to cross-examine Wife's attorney on those issues at the final hearing. *See King v. King,* 384 S.C. 134, 145, 681 S.E.2d 609, 615 (Ct.App.2009) (noting husband's objection to Wife's affidavit documenting her attorney's fees was untimely because he never objected or attempted to cross-examine Wife's counsel on the affidavit at the final hearing). Furthermore, while Husband generally contested the attorneys' fees award in his Rule 59(e), SCRCP, motion on the grounds the award was excessive, he failed to specifically object to the propriety of including these fees at the final hearing. *See Hickman v. Hickman,* 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct.App.1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not."). As a result, we decline to address this particular argument on appeal. *See*

*Doe,* 370 S.C. at 212, 634 S.E.2d at 55 (finding wife failed to preserve argument when she did not raise the issue specifically at the final hearing or in her Rule 59(e) motion and only generally asserted the decree was unsupported by the evidence).

## IV. Conclusion

Based on the foregoing, we affirm the family court's decision to impute additional income to Husband for purposes of calculating child support and to require Husband to pay half of Wife's attorneys' fees. Additionally, we modify the portion of the family court's order regarding its classification of Wife's medical expenses as marital debt but affirm its decision to divide the debt equally between the parties.

Accordingly, the family court's decision is

**AFFIRMED AS MODIFIED.**

SHORT and LOCKEMY, JJ., concur.