709 S.E.2d 543

**King SMALLWOOD, Appellant,**

v.

**Queen SMALLWOOD, Respondent.**

**No. 4809.**

Court of Appeals of South Carolina.

Heard Dec. 9, 2010.

Decided March 16, 2011.

Brian Austin Katonak, of Aiken, for Appellant.

Wendy Pauling Levine, of Columbia, for Respondent.

LOCKEMY, J.

In this divorce action, King Smallwood (Husband) appeals the family court's final order and decree of divorce, arguing the family court erred in (1) finding three rental properties were marital property, (2) equitably dividing the Southern Union Revolving Fund account, and (3) including a portion of Husband's retirement relocation benefit in the marital estate. We affirm in part and reverse in part.

## FACTS

Husband and Queen Smallwood (Wife) were married in March 1993, and no children were born as a result of the marriage. Husband was employed as a pastor in the Seventh Day Adventist Church (the Church) for forty-two years before his retirement in 2006. Wife was unable to work full-time after suffering a brain hemorrhage in 1991, but held part-time jobs caring for children and the elderly.

In 1992, prior to the parties' marriage, Husband purchased three rental properties located at 106 Roberta Drive, 122 Roberta Drive, and 150 Braly Drive (the rental properties) in Summerville, South Carolina. According to Husband's testimony, the rental properties were operated under his company, Smallwood Properties, Inc., and their mortgages were paid with rental income.[1] During their marriage, Husband and Wife lived briefly in both the 106 Roberta Drive property and the Langley Drive property, another rental property purchased by Husband prior to the parties' marriage.[2] According

---

1. The family court determined, based upon Husband's financial declaration statement, Husband's total monthly income from the rental properties and two Atlanta rental properties purchased after the parties separated was $8,525.

2. The Langley property was sold during the marriage.

to Wife's testimony, she assisted Husband in managing the rental properties by cleaning, checking tenant references, filing evictions, and handling tenant disputes until the parties moved to Charlotte, North Carolina in 1998. After Husband and Wife moved to Charlotte, the rental properties were managed by property management companies. The mortgages on the rental properties were fully paid at the time of the final hearing.

Husband had a Southern Union Revolving Fund account (SURF account) through the Church. At the time this action was filed, the SURF account had a $28,582.63 balance and was in both Husband's and Wife's names. According to Husband, he deposited $12,000 from the sale of the Langley property into the SURF account during the marriage. Additionally, Husband deposited $60 a month of his Church income into the account.[3] Husband also used funds from the SURF account to support the rental properties. Husband testified Wife did not make any contributions to the SURF account. After his retirement, Husband received a $15,080 relocation benefit from the Church. Husband and Wife testified this lump sum payment was given to retiring Church pastors to assist with their relocation expenses.

In December 2005, Husband initiated this action by petitioning the family court for an order of separate maintenance. In July 2008, the family court granted Husband a divorce based on one year's continuous separation.[4] The family court determined the marital estate should be distributed fifty percent to Wife and fifty percent to Husband. It valued the three rental properties at $125,000 each and awarded Wife the 150 Braly Drive property and Husband the 106 Roberta Drive property. The family court determined the remaining rental property, 122 Roberta Drive, was to be included in the equitable distribution of the marital assets. The family court also found the SURF account and thirty-one percent, or $4,674.80, of Husband's $15,080 relocation benefit were marital assets. Additionally, the family court awarded Wife permanent, periodic

---

3. Husband's $60 a month payroll deduction began in 2002 and continued until his retirement in 2006.

4. Husband amended his initial pleading at the start of trial to include an action for divorce.

alimony and attorney's fees. Husband's motion for reconsideration was denied. This appeal followed.

## STANDARD OF REVIEW

■ In appeals from the family court this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). Despite this broad scope of review, this court is not required to disregard the findings of the family court. *Id.* We are mindful that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

### I. Rental Properties

■ Husband argues the family court erred in including the rental properties in the marital estate. Specifically, Husband maintains he purchased the rental properties prior to the parties' marriage and they were never transmuted into marital property. We agree.

The family court determined that although Husband made the down payments on the rental properties prior to the parties' marriage, they were transmuted into marital property "by virtue of the intention of the parties as expressed in their actions." The family court found Wife was a manager of the rental properties and commingled funds were used to support the rental properties. The family court noted Husband and Wife lived in the 106 Roberta Drive and the Langley Drive properties during their marriage and the properties were paid in full during the marriage from rental income, the parties' jointly titled bank account, and Husband's earnings during the marriage. The family court also found the insurance bill for the 106 Roberta Drive property was held in the name of both parties.

Husband argues the rental income from the properties was deposited into his Smallwood Properties account and no marital funds were used to support the rental properties. Husband also maintains the mortgages on the rental properties

were paid with rental income. Husband acknowledges Wife assisted with the rental properties by painting, cleaning, and taking lease applications; however, he contends the rental properties were not transmuted into marital property because he never intended to treat them as marital property.

Wife contends the rental properties were transmuted into marital property. She argues the record contains no evidence Husband intended to treat the rental properties as non-marital, and Husband failed to identify the account in which he deposited the rental income prior to 2005. Wife also argues she assisted Husband with managing the rental properties, and marital funds were used to pay the debt on the rental properties.

"Transmutation is a matter of intent to be gleaned from the facts of each case." *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct.App.2001). "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Johnson v. Johnson*, 296 S.C. 289, 295, 372 S.E.2d 107, 110–11 (Ct.App. 1988). "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 295, 372 S.E.2d at 111. "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* at 295–96, 372 S.E.2d at 111.

We find the family court erred in determining the rental properties were transmuted into marital property. Wife failed to carry her burden of producing objective evidence showing Husband regarded the rental properties as the common property of the marriage. Husband purchased the rental properties prior to parties' marriage and testified at trial they were his property and did not belong to Wife. The record contains no evidence Husband ever placed the rental properties in Wife's name or transferred the properties to Wife as a gift. Although Husband and Wife lived in the 106 Roberta

Drive property for several months at the beginning of their marriage, Wife failed to present any evidence Husband intended to treat that property, or any of the other rental properties, as marital. *See id.* (holding "the mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation").

Furthermore, we do not agree with Wife's argument that the assistance she provided Husband in managing the rental properties was evidence of the parties' intent to treat the properties as marital. According to Wife's testimony, she helped manage the rental properties by cleaning and handling tenant matters until the parties moved to Charlotte in 1998. However, Husband testified Wife only assisted him for a few months after they married and before she returned to work. Thereafter, according to Husband, he employed other individuals and property management companies to manage the rental properties. After 1998, the rental properties were managed by property management companies. While we recognize Wife's contributions of time and labor during the parties first five years of marriage, they are insufficient to prove transmutation. *See Murray v. Murray,* 312 S.C. 154, 158, 439 S.E.2d 312, 315 (Ct.App.1993) (holding Wife's contributions of time and labor in maintaining the marital home and rental properties did not prove transmutation).

Additionally, the record included no evidence Husband commingled the rental properties with marital property, used the rental properties exclusively for marital purposes, or used marital funds to build equity in the rental properties. Husband testified he paid the mortgages on the rental properties with rental income. No evidence is in the record that marital funds were ever used to pay the mortgages. Husband also testified property management companies deposited the income from the rental properties into his Smallwood Properties bank account. The record does not reflect that rental income was ever deposited into the parties' joint bank accounts. Furthermore, Husband's admission he used funds from the parties' joint SURF account to support his business is insufficient evidence of intent to treat the rental properties as marital. Husband did not testify as to how much money was used from the SURF account or how the money was used to

support the rental properties. Thus, based on the preponderance of the evidence, we find Husband did not intend to treat the rental properties as marital property, and, therefore, they were not transmuted. Accordingly, we reverse the family court's determination that the rental properties were transmuted into marital property and subject to equitable distribution.

## II. SURF Account

■ Husband argues the family court erred in equitably dividing the proceeds of the SURF account. We disagree.

The SURF account was valued at $28,582.62 at the time of the divorce. The family court determined the SURF account was marital property and, as part of the equitable distribution of the marital estate, Husband and Wife were each entitled to $14,291.31. Husband argues the SURF account was non-marital property and was never transmuted into marital property. He asserts the SURF account was funded primarily with the proceeds from the sale of the Langley Drive property, which he maintains was non-marital. Husband also contends he never expressed any intent to treat the SURF account as marital property and Wife did not make any contributions to the account. Husband acknowledges the $60 a month he deposited into the SURF account through payroll deduction could be considered marital property.

Wife argues the SURF account was transmuted into marital property. She asserts the SURF account was jointly titled and contained funds deposited by Husband during the marriage commingled with Husband's salary. Wife contends that while Husband maintains he deposited the proceeds from the sale of the Langley Drive property into the account, he failed to produce any evidence the funds he deposited were non-marital.

We find the family court properly determined the SURF account was marital property. Pursuant to section 20–3–630(A) of the South Carolina Code (Supp.2010), "marital property" is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held...." At trial,

Husband acknowledged the money held in the jointly titled SURF account was acquired during the parties' marriage. Husband testified he deposited $60 a month of his salary as well as the proceeds from the sale of the Langley Drive property into the account. Furthermore, the record contains evidence of the parties' intent to treat the SURF account as marital property. Both parties testified the SURF account was used to save money for the parties' trip to Hawaii. Husband also testified he made investments in his and Wife's names using funds from the SURF account. Accordingly, we affirm the family court's determination that the SURF account was marital property subject to equitable distribution.[5]

## III. Relocation Benefit

■  Husband argues the family court erred in finding a portion of the $15,080 relocation benefit he received after his retirement from the Church was marital property. Specifically, Husband argues the relocation benefit was non-marital property because it was not part of his retirement pay and he received it after the divorce proceeding was commenced. This argument is not preserved for our review.

At trial, Husband argued a portion of the relocation benefit was marital property subject to equitable distribution. Husband testified the relocation benefit was "based on [forty-two] years of service" to the Church and Wife was entitled to an equitable share based on the length of the parties' marriage. Husband even attempted to submit his own calculations of Wife's share based on the parties' thirteen-year marriage to the court. The family court agreed with Husband that Wife was entitled to a portion of the relocation benefit. It deter-

---

5. Husband argues that if this court finds the SURF account was marital property, he should receive credit for the $9,000 he withdrew from SURF account to satisfy a marital debt owed to Metropolitan Life, and for the $2,250 he contends he gave Wife from the SURF account after this divorce proceeding was commenced. These arguments are not preserved for our review. *See Feldman v. Feldman,* 380 S.C. 538, 545, 670 S.E.2d 669, 672 (Ct.App.2008) (holding for an issue to be preserved for appeal it must have been raised to and ruled upon by the trial court); *see also Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding when a trial court fails to address a specific argument raised by the appellant, the appellant must make a motion to alter or amend pursuant to Rule 59(e), SCRCP, to obtain a ruling on the argument or the matter is not preserved for appellate review).

mined, based on the parties' thirteen-year marriage, thirty-one percent of the relocation benefit was marital property subject to equitable distribution.

In his Rule 59(e), SCRCP motion, Husband raised for the first time his argument that Wife was not entitled to a portion of the relocation benefit. Husband asserted the benefit was given to him "for purposes of relocating upon his retirement" and therefore it "should not be part of the marital estate." Furthermore, on appeal, Husband contends Wife was not entitled to a portion of the benefit because it was not considered part of his retirement pay and he received it after the divorce proceeding was commenced. Because Husband failed to raise the argument that the relocation benefit was non-marital property at trial, it is not preserved for our review. *See Hickman v. Hickman,* 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct.App.1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not."); *see also Dixon v. Dixon,* 362 S.C. 388, 399, 608 S.E.2d 849, 854 (2005) (holding that an issue first raised in a post-trial motion is not preserved for appellate review); *Susan R. v. Donald R.,* 389 S.C. 107, 118, 697 S.E.2d 634, 640 (Ct.App.2010) (holding Husband's argument that Wife's attorney's fees award was excessive was not preserved for appellate review because Husband raised that argument for the first time in a Rule 59(e) motion). Accordingly, we affirm the family court's decision to include thirty-one percent of the relocation benefit in the marital estate.

## CONCLUSION

We find the family court erred in determining the rental properties were transmuted into marital property. Additionally, we find the family court did not err in equitably dividing the SURF account and the marital portion of Husband's relocation benefit. Accordingly, the family court's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and KONDUROS, JJ., concur.