716 S.E.2d 310

**Hala K. NESTBERG, Respondent/Appellant,**

v.

**Paul V. NESTBERG and Eastview Development, Inc., Appellants/Respondents.**

No. 4883.

Court of Appeals of South Carolina.

Submitted June 1, 2011.

Decided Aug. 31, 2011.

620

Jessica Ann Salvini, of Greenville, for Appellants/Respondents.

Kenneth C. Porter, of Greenville, for Respondent/Appellant.

FEW, C.J.

This cross-appeal presents two primary issues: (1) whether property purchased before the marriage should have been included in the marital estate for purposes of equitable division, and (2) whether alleged marital economic misconduct should have affected the division of the marital estate. We affirm the family court's decision to include the property in the marital estate, but reverse the ruling that economic misconduct affected its valuation. We remand for a new trial as to the valuation of one asset of the marital estate.[1]

## I. Facts and Procedural History

Paul and Hala Nestberg married on September 28, 1996. A little over a month before they married, Paul bought a four-teen-acre piece of land, which was titled only in his name. He purchased the property with borrowed funds secured by two mortgages, one to the seller and one to his stepmother. Hala went with him to look at the property but did not attend the closing. Paul and Hala intended to live together in the home on the property after they married, and did so for their entire marriage.

In January 2001, Paul lost his job. For the next six months he was able to use his severance benefits to make the mortgage payments on the property. Paul never secured other employment. Hala took a second job, and for the remainder of the marriage, the couple used her salary to pay the mortgages.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

About the time his severance package ran out, Paul said he "began looking into developing" the property. He divided the property into fifteen parcels, one for their marital home and fourteen to sell as lots in a new residential subdivision. In January 2002, Paul formed Eastview Development Company and transferred the fourteen lots to Eastview. The property was slow to sell, and by 2006 Paul had sold only three lots.

In 2006, Paul met another couple and formed the Danielson Company with them to continue developing the subdivision. On December 11, 2006, Paul filed for divorce on the ground of Hala's alleged physical cruelty. However, in March 2007 Paul agreed to dismiss the complaint, and they attempted to reconcile their marriage. Two months later Hala moved out, and on May 11, 2007, she filed a complaint for an order of separate maintenance and support, equitable division of marital assets, attorney's fees, and a restraining order preventing the parties from disposing of any assets. Paul answered and requested a divorce on the ground of living separate and apart without cohabitation for a period of one year. On August 1, 2008, the family court granted the divorce.

Between the December 2006 and May 2007 filings, Paul sold the six remaining subdivision lots. Hala contends Paul sold them at prices below fair market value to intentionally devalue Eastview in contemplation of marital litigation. Paul contends he needed to sell them to avoid bankruptcy.

On July 6, 2009, the family court issued its order addressing equitable division and attorney's fees. The court found the property and home were marital property and, therefore, Eastview was also marital property. The court concluded five lots sold between December 2006 and May 2007 "were sold far below fair market value ... in contemplation of marital litigation." The court adjusted the equitable division based on the finding of marital economic misconduct.[2] Finally, the court granted Hala's request for attorney's fees and costs because it

---

2. Marital economic misconduct is a factor the family court must consider in making an equitable apportionment. S.C.Code Ann. § 20–3–620(B)(2) (Supp.2010) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to all of the following factors: ... (2) *marital misconduct* or fault of either or both parties, ... if the misconduct affects or has affected the *economic* circumstances of the parties ...." (emphases added)).

found she prevailed on the main issue in this case, the valuation of Eastview.

Paul appeals arguing three issues: (1) Eastview and the home should be nonmarital property, (2) alternatively, if the property is found to be marital, the court erred in finding he committed marital economic misconduct and in considering that misconduct in equitable distribution, and (3) the court erred in awarding Hala attorney's fees. Hala also appeals arguing three issues: (1) the court should have given Eastview a higher value, (2) the court should have given the Danielson Company a higher value, and (3) a $20,000 promissory note accompanying the sale of the house should not have been classified as a marital debt.

We review the family court's decision de novo. *Lewis v. Lewis,* 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). While we have the authority to make our own findings of fact, we commonly defer to the family court's factual findings of credibility because it is in a superior position to assess the demeanor of witnesses. 392 S.C. at 390–91, 709 S.E.2d at 654–55. It is the appellant's burden to demonstrate the preponderance of the evidence is against the family court's factual findings. 392 S.C. at 391, 709 S.E.2d at 655.

## II. Paul's Appeal
### a. Home and Eastview as Marital Property

Section 20–3–630(A)(2) & (3) of the South Carolina Code (Supp.2010) excludes from the term "marital property" any "property acquired by either party before the marriage" and "property acquired by either party in exchange for property described in items (1) and (2) of this section." Based on this statute, Paul and Hala's home and the property transferred to Eastview are nonmarital property because Paul bought them "before the marriage." § 20–3–630(A)(2). However, the family court found the property had been transmuted into marital property.

Nonmarital property "may be transmuted ... if it is used by the parties ... in some manner so as to evidence an intent by the parties to make it marital property."[3] *Murray*

---

3. Our courts recognize other ways in which nonmarital property can be transmuted into marital property. *See Jenkins v. Jenkins,* 345 S.C. 88,

*v. Murray,* 312 S.C. 154, 157, 439 S.E.2d 312, 314 (Ct.App. 1993). "Transmutation is a matter of intent to be gleaned from the facts of each case." *Smallwood v. Smallwood,* 392 S.C. 574, 579, 709 S.E.2d 543, 545 (Ct.App.2011); *Murray,* 312 S.C. at 157, 439 S.E.2d at 315. "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Smallwood,* 392 S.C. at 579, 709 S.E.2d at 545–46. Such evidence " 'may include . . . using the property exclusively for marital purposes, . . . using marital funds to build equity in the property, or exchanging the property for marital property.' " 392 S.C. at 579, 709 S.E.2d at 546 (quoting *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 111 (Ct.App.1988)).

The facts of this case demonstrate that Paul and Hala regarded the property as common property of the marriage. In addition to the fact that they lived in the home for the duration of their marriage, Hala's primary role in paying the mortgages for five years after Paul lost his job tips the scale in favor of transmutation. Her salary from both jobs was placed into a joint checking account until Paul's December 2006 divorce filing. The joint checking account contained marital funds that were used to build equity in the property by paying the mortgages. Paul agreed he relied on Hala's income and credit cards to develop the land he transferred to Eastview and that, "to a degree," Hala "had been carrying the majority of the income for five years." Hala testified that after she quit contributing to the joint checking account, Paul could not make the mortgage payments. Finally, Paul conceded that even after he got business capital from his business partners in the Danielson Company, he still needed Hala's income to pay for his personal expenses, including the mortgages on the property.

Because the property was transmuted into marital property, it remained marital after Paul transferred it to Eastview Development Company. Therefore, we agree with the family court that Eastview and the home are marital property. *See* S.C.Code Ann. § 20–3–630(A)(3) (Supp.2010).

---

98, 545 S.E.2d 531, 537 (Ct.App.2001) (stating nonmarital property may be transmuted if "it becomes so commingled with marital property as to be untraceable; [or if] it is jointly titled").

### b.   Valuation of Eastview

■   Both parties dispute the proper valuation of Eastview. As we explain below, we reverse the family court's valuation of Eastview and remand for a new trial on this issue.

■   For purposes of equitable division, marital property should be valued as of the date the marital litigation was filed. *Gardner v. Gardner,* 368 S.C. 134, 136, 628 S.E.2d 37, 38 (2006).   When there are two filing dates, the court must use the date of the filing of the litigation which lead to the equitable division. *See Hickum v. Hickum,* 320 S.C. 97, 100, 463 S.E.2d 321, 323 (Ct.App.1995) (holding the "litigation required 'to trigger the statute must be the same litigation which brings about the equitable division.'  ... 'It is not enough that the parties in the past engaged in some litigation if that litigation did not serve as the vehicle for equitable division'" (quoting *Shannon v. Shannon,* 301 S.C. 107, 112, 390 S.E.2d 380, 383 (Ct.App.1990))).   Because the May 2007 action filed by Hala is the litigation which brought about the equitable division in this case, May 11, 2007, is the correct date of valuation for the Nestbergs' marital property.

In making its decision as to the value of Eastview, the family court considered the fact that Paul sold five lots between December 2006 and May 2007 for less than market value.   In light of this consideration, the family court changed the date of valuation for Eastview from May 11, 2007, to the date Paul filed his action in December 2006.   We hold this was error.   We find Paul did not engage in marital economic misconduct by selling the lots below market value, and thus the valuation of Eastview may not be adjusted to account for those sales.[4]

In ordering an equitable apportionment of marital property, the family court must consider any marital misconduct that "affects or has affected the economic circumstances of the

---

4.  We also note the family court should not change the date of valuation in order to account for the effect of the marital economic misconduct. The filing date of the litigation which brought about the equitable division is always the correct valuation date.   Using that date, the family court adjusts what property is included in the marital estate, how much each party receives in the division of the estate, or both, to account for the effect the marital economic misconduct had on the value of the estate.   S.C.Code Ann. § 20–3–620(B)(2)–(3) (Supp.2010).

parties." S.C.Code Ann. § 20–3–620(B)(2) (Supp.2010). This court discussed the use of marital economic misconduct in equitable division in *Panhorst v. Panhorst*, 301 S.C. 100, 390 S.E.2d 376 (Ct.App.1990). In *Panhorst*, the husband regularly gave his mother cash gifts totaling between $25,000 and $30,000 throughout the parties' twenty-year marriage. 301 S.C. at 104, 390 S.E.2d at 378–79. Because the wife did not know about the gifts, she claimed "the family court should have treated them as part of the marital estate subject to equitable division." 301 S.C. at 104, 390 S.E.2d at 379. This court disagreed for two reasons. First, we concluded the property was not subject to equitable division because "at the time the action was filed, it no longer belonged to either of the Panhorsts as the statute requires." 301 S.C. at 104–05, 390 S.E.2d at 379. Second, we found no evidence that the husband gave the money to his mother in contemplation of marital litigation. 301 S.C. at 105–06, 390 S.E.2d at 379. Because we found no evidence of fraudulent intent or purposeful reduction of the marital estate in contemplation of marital litigation, this court refused to include the gifts as part of the marital estate for equitable division. *Id.*

In *McDavid v. McDavid*, 333 S.C. 490, 492–93, 511 S.E.2d 365, 366–67 (1999), the supreme court addressed the question of whether money the husband used in support of his failing business without his wife's knowledge should be deducted from his equitable distribution. Similar to the argument Hala makes in this case, the wife argued her husband's actions constituted "marital misconduct" that "affected the economic circumstances of the parties," and therefore should be considered in making an equitable apportionment. 333 S.C. at 493, 511 S.E.2d at 367. The supreme court disagreed and held "poor business decisions, in and of themselves, do not warrant a finding of marital 'misconduct,' and that there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct." 333 S.C. at 496, 511 S.E.2d at 368. Because the court found "no such evidence," it did not deduct from the husband's equitable distribution. *Id.*

Finally, in *Deidun v. Deidun*, 362 S.C. 47, 59, 606 S.E.2d 489, 496 (Ct.App.2004), this court upheld a finding of marital economic misconduct and took it into account in making the

equitable division. The wife hid from her husband the accumulation of over $450,500 in credit card debt, increase in lines of credit by $13,218, and withdrawal of almost $27,000 from an IRA. 362 S.C. at 58–59, 606 S.E.2d at 495. This court distinguished the facts from *McDavid*, stating:

> Although there is nothing in the record to indicate that Wife acted with any bad faith in her spending habits, we believe *McDavid* is more applicable to cases involving business expenditures. Wife's depletion of marital funds and increase of the marital debt in the present case were not to support a failing business. Accordingly, we find *McDavid* inapplicable in the present case and the family court's consideration of Wife's failure to appropriately manage the family finances was not error.

362 S.C. at 60, 606 S.E.2d at 496. Because the wife's "spending amounted to ... economic misconduct," this court affirmed the family court's decision to consider it in granting the husband a higher percentage of the marital assets. 362 S.C. at 55, 61–62, 606 S.E.2d at 493, 497.

Here, the facts involve challenged business expenditures. Therefore, the family court must find the allegedly at fault party engaged in "willful misconduct, bad faith, intention[al] ... dissipat[ion of] marital assets, or the like" before it may alter the equitable distribution of marital property based on economic misconduct. *McDavid*, 333 S.C. at 496, 511 S.E.2d at 368.

The family court made no such finding in this case. The only factual finding made by the family court is that "these sales were made in contemplation of marital litigation." This finding will not support the family court's decision to alter the equitable distribution.

We find the preponderance of the evidence does not support any of the findings required to alter the equitable distribution of marital property based on economic misconduct. While most of the lots sold after the December 2006 filing were sold below market value, we find Paul's decision to do so was reasonable under the circumstances. Paul explained his decision as follows:

> Well, I was covered up with debt, under financial stress, had no income myself. Hala quit contributing any income whatever as of January of that year. So, during that time, I was

having to depend on whatever money I could generate from my work or from sales of the lot or whatever. Someone came along and offered me money for those lots. I looked at it as an opportunity to pay debt, and that's exactly what I did.

Similarly, one of Paul's economic experts testified Paul's actions in selling the lots for low prices "makes a lot of sense when you look at the financial health of Paul Nestberg individually. He owed over $150,000 in credit cards. He didn't maintain the debts and the lots without going into bankruptcy. It made it very possible to sell those lots." Later in his testimony, the expert said "there would be reason to suspect that the company ... without selling the lots could not stay in business." We agree with the expert that selling the lots below market value made good sense under the circumstances. Because we find Paul did not engage in willful misconduct or bad faith, did not intend to dissipate marital assets, and did not purposefully reduce the value of Eastview in contemplation of marital litigation, we reverse the family court's decision to alter the valuation of Eastview.

On remand, the family court must determine the value of Eastview as of May 11, 2007, and apportion it without any consideration of marital economic misconduct.

### c. Hala's Attorney's Fees

The family court awarded attorney's fees to Hala because it found she prevailed on the main issue in the case and Paul was in a better position to pay. Because we reverse the family court's valuation of Eastview, on remand, the family court must reconsider whether to award attorney's fees and, if so, how much. *See Sexton v. Sexton,* 310 S.C. 501, 503–04, 427 S.E.2d 665, 666 (1993) (reversing and remanding attorney's fees issue for reconsideration when the substantive results achieved by trial counsel were reversed on appeal); *Pruitt v. Pruitt,* 389 S.C. 250, 274, 697 S.E.2d 702, 715 (Ct.App.2010) (remanding for reconsideration of attorney's fees where the court also remanded for a determination of whether wife had equity interest in home).

### III. Hala's Appeal

We decline to address Hala's two remaining issues—the value of Danielson Company and a $20,000 promissory note

accompanying the sale of the house included as marital debt—because we find they are not preserved for our review. Although the two issues were mentioned briefly at the hearing on the motions to reconsider, Hala did not object to the judge's ruling as to either issue. At the end of the hearing, the judge did a "recap to make sure [she] got the crux of everybody's argument." However, the judge did not mention the value of Danielson or the note. The order addressing the motions to reconsider lists each party's arguments, but does not mention the value of Danielson or the note as marital debt. Therefore, the issues are unpreserved. *Nicholson v. Nicholson*, 378 S.C. 523, 537, 663 S.E.2d 74, 81–82 (Ct.App.2008) (stating an issue must have been raised to and ruled upon by the trial judge to be preserved on appeal, and if the trial court does not rule on an issue and the appellant does not raise it in a Rule 59(e) motion, it is unpreserved).

## IV. Conclusion

We affirm the finding that the home and Eastview are marital property. We reverse the family court's valuation of Eastview, and remand for a new trial as to that issue and the issue of attorney's fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

PIEPER and LOCKEMY, JJ., concur.