**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Karen Wise Ferguson, Appellant,

v.

Bruce Linton Ferguson, Respondent.

Appellate Case No. 2009-143732

————————

Appeal From Greenville County
Letitia H. Verdin, Family Court Judge

————————

Unpublished Opinion No. 2013-UP-132
Heard October 31, 2012 – Filed April 3, 2013

————————

**AFFIRMED IN PART, REMANDED IN PART**

————————

J. Falkner Wilkes, of Greenville, for Appellant.

Kenneth C. Porter, Porter & Rosenfeld, of Greenville, for Respondent.

————————

**PER CURIAM:** Karen Wise Ferguson (Wife) appeals a divorce decree, arguing (1) her alimony award was insufficient and (2) an asset purchased by Bruce Ferguson (Husband) should have been included in the marital estate. We affirm in part and remand in part.

1.  The family court granted Wife alimony in the amount of $550 per month, but further provided that alimony would end either two years from the date of the signing of the divorce decree or upon Husband's retirement, whichever occurred later. Wife argues she should have received an award of permanent periodic alimony. We remand this matter to the family court for further findings of fact and to reconsider whether Wife should have been awarded permanent alimony.

Although it was undisputed that Husband was approaching retirement age, the family court also found (1) he had substantial marital assets in the six-figure range, (2) the parties were married approximately twenty years, and (3) both were at fault in the breakup of the marriage. Husband also had substantial nonmarital assets. The family court found Wife was in relatively poor health, had substantial recurring medical expenses, and was not likely to be able to work full-time. In addition, although Wife had acquired some nonmarital assets through an inheritance, these had been transmuted into marital property. The family court should have considered all these circumstances in setting the alimony award. *See* S.C. Code Ann. § 20-3-130(C) (Supp. 2012) (enumerating certain factors that "the court *must* consider" and weigh appropriately in making an award of alimony or separate maintenance and support) (emphasis added). We are unable to determine from the appealed order how these and other factors prompted the family court to allow Husband to cease paying alimony at some future time without petitioning the family court. Moreover, in setting the alimony at $550 per month, the family court did not explain how the amount itself would reflect the expectation that Husband would retire. *See Sharps v. Sharps*, 342 S.C. 71, 78, 535 S.E.2d 913, 917 (2000) ("As a general rule, a court hearing an application for a change in alimony should look not only to see if the substantial change was contemplated by the parties, but most importantly whether the amount of alimony in the original decree reflects the expectation of that future occurrence."). Notably, the family court does not explain how Wife, who had no other ascertainable source of income, was to provide for her needs after cessation of her alimony payments. *Cf. Roof v. Steele*, 396 S.C. 373, 387-88, 720 S.E.2d 910, 918-19 (Ct. App. 2011) (affirming the finding that supported spouse demonstrated a change of circumstances warranting an increase in her alimony and noting the modest amount of alimony awarded did not consider her needs should she lose coverage under the supporting spouse's employer's health insurance plan even though the parties acknowledged the possibility of such a loss in their settlement agreement). Because we are unable to justify the family court's award of alimony based on the record, we remand this matter for further findings of fact. *See Epperly v. Epperly*, 312 S.C. 411, 415-16, 440 S.E.2d 884, 886-87 (1994) (reversing and remanding the issues of alimony and

equitable division because the family court failed to examine all the relevant statutory factors); *Grumbos v. Grumbos*, 393 S.C. 33, 48, 710 S.E.2d 76, 84 (Ct. App. 2011) (remanding the issue of attorney's fees to the family court because, among other reasons, the order lacked specific findings to support the amount awarded).

2.      Wife further argues that some gold Husband purchased with an inheritance and valued at $69,000 had been transmuted and should have been included in the marital estate.  We disagree.

The basis for Wife's argument that the gold had been transmuted appears to be Husband's decision to place the gold in a safe deposit box that was in both parties' names.  She contends that the use of the jointly held safe deposit box was tantamount to "the placing of the gold in joint names," which, she asserts, "is *prima facie* proof of Husband's intent to make the gold marital in nature" and at least shifts the burden to Husband to show that he did not intend to make the gold a marital asset.  For title to be an indication of transmutation, however, the property allegedly transmuted must itself be titled jointly.  *See Peterkin v. Peterkin*, 293 S.C. 311, 313, 360 S.E.2d 311, 312-13 (1987) (noting three circumstances under which transmutation may occur, including that the property is titled jointly); *Sanders v. Sanders*, 396 S.C. 410, 416, 722 S.E.2d 15, 17 (Ct. App. 2011) ("[T]he act of depositing an inheritance into the parties' joint account does not automatically render the inherited funds to be marital property.").

Wife also argues that Husband told her that his inheritance would fund their retirement and, in reliance on this promise, she allowed her own inheritance to be transmuted.  We have not found any authority for the proposition that a statement of future intent regarding an individually owned asset mandates a finding that the asset has been transmuted.  Here, the gold retained a separate identity, was never commingled with marital assets, and was never actually "utilized" by the parties in support of the marriage or in a manner evidencing the parties' intent to make it marital property.  *See Smith v. Smith*, 386 S.C. 251, 268, 687 S.E.2d 720, 729 (Ct. App. 2009) (noting circumstances under which nonmarital property is transmuted into marital property).  Moreover, the only evidence Wife presented about Husband's promise and her reliance on his assurance was her own testimony; Husband never admitted that he agreed his inheritance would be used for the parties' retirement.  Based on these circumstances, we decline to disturb the family court's refusal to include the Husband's gold in the marital estate.  *See Nestberg v. Nestberg*, 394 S.C. 618, 623, 716 S.E.2d 310, 313 (Ct. App. 2011) (stating that

although an appellate court has the authority to make its own findings of fact when reviewing a family court order, it commonly defers to the family court's factual findings of credibility because the family court "is in a superior position to assess the demeanor of witnesses"); *Pirri v. Pirri*, 369 S.C. 258, 270, 631 S.E.2d 279, 286 (Ct. App. 2006) ("The burden is on the spouse claiming transmutation to produce objective evidence that the parties considered the property to be marital during the marriage.").

**AFFIRMED IN PART, REMANDED IN PART.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**